THE PHILADELPHIA, WILMINGTON AND BALTIMORE
RAILROAD COMPANY *vs.* THE STATE OF MARYLAND,
use of SARAH E. BITZER, *et al.*

*Action for Death caused by Negligence—Construction of sec. 3
of Art. 65 of the Code, as to the effect of Failure to furnish
the "particular" required by that section—Motion in arrest—
Form of Declaration in Actions for Negligence under Art.
65 of the Code—Province of Jury in cases of Conflicting evi-
dence—Question as to who are Co-employés in cases of Con-
necting Railroad Companies—Effect of Agreement between
the owners of Connecting Railroads, upon the rights of
Strangers to the agreement.*

Where the defendant to an action brought under section 3 of Article
65 of the Code, does not demand the particular required to be
furnished by that section, but files its pleas without it, it may be
considered as having waived its right to have it. This section is
not mandatory. The requirement to deliver a "particular," as pro-
vided by it, is merely directory, and in no wise affects the right of
the plaintiff to maintain the suit.

Motions in arrest are for matters apparent on the face of the record,
and this particular being no part of the record, the failure to furn-
ish it furnishes no ground for such motion.

In an action under said Article 65, it is not necessary to allege that
defendant's negligence was such that if death had not ensued the
injured person would himself have been entitled to recover for the
injury done him.

Where the evidence of negligence on the part of the plaintiff as well
as on the part of the defendant is conflicting, it is properly left to
the jury, whose particular province it is to consider and pass upon
it.

Whatever effect an agreement between the several companies owning
connecting lines of railroad, may have upon the parties thereto, it
cannot have any upon strangers to it, nor alter or change the rela-
tions of either of them towards third parties, nor have the effect of

making those who were employed and paid wages by either of the contracting parties, the co-employés of the agents and workmen of the other parties, or make the others liable either severally or jointly for any loss or damage caused by the neglect of any one of them, even were the agreement silent in this respect.

Where an injury to the employé of one of said companies occurs on the road of another of said companies, and is caused by the imperfect condition of said road, the principle that every employé assumes the risk of the negligence of his co-employés, is not applicable to him.

APPEAL from the Circuit Court for Carroll County.

The case is sufficiently stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the three following prayers:

1. If the jury shall find from the evidence, that Samuel Bitzer was the driver of a car in use on the road of defendant, in pursuance of the written agreement given in evidence, and that on or about the 23rd of July, 1871, he was, while driving said car in the course of his employment, killed on the road of the defendant by being run over by said car, and that such killing resulted from an imperfection in defendant's road or road-bed, in consequence of which said Bitzer fell or was thrown down, and was run over and killed by said car without any want of ordinary care and prudence on his part; and if the jury shall further find that said imperfection was the result of a want of ordinary care and prudence on the part of the defendant, and that the equitable plaintiffs are related to the said Samuel Bitzer in the manner set forth in the declaration, then the plaintiff is entitled to a verdict, and the damages must be confined to the widow and such of the children named in the *narr.* as the jury shall find were under the age of twenty-one years at the time of the

death of the said Samuel Bitzer, or were dependent upon him for support in whole or in part.

2. If, under the instructions of the Court, the jury should find for the plaintiff, then, in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased Bitzer, and give the equitable plaintiffs such pecuniary damages, not only for past losses, but for such prospective damages as the jury may find that they have suffered, or will suffer, as the direct consequence of the death of the said Bitzer; that for his child these prospective damages may be estimated to his majority; and as to the widow, to such probability of life as the jury may find reasonable under the facts and circumstances proved in this case.

3. That in considering the question of negligence, it is competent for the jury, in connection with the other facts and circumstances of the case, to infer the absence of fault on the part of the deceased, from the general and known disposition of men to take care of themselves, and to keep out of the way of difficulty and danger.

And the defendant offered the seventeen following prayers:

1. That on the pleadings and all the evidence in the cause, the plaintiff is not entitled to recover, and the verdict must be for the defendant.

2. That the plaintiff is not entitled to recover for each and every of the reasons following:

1. The plaintiff has given no sufficient proof of the direct cause of the death of Samuel Bitzer, and no sufficient proof that said death was caused by the negligence of defendant.

2. The plaintiff has proved contributory negligence on the part of said Samuel Bitzer in this, that he cut off or detached the horses drawing the car in question from said car, at a point which involved increased and unnecessary danger to himself; that cutting off or detaching said horses

from said car at or east of Albemarle Street, would have been less dangerous, and cause or reason has been shown by the proof, of which prevented him from continuing to drive said car to or east of Albemarle Street, before cutting off or detaching said horses therefrom.

3. That the danger of cutting off or detaching said horses from said car west of Albemarle Street, was voluntarily assumed by said Bitzer.

4. That the employment of said Bitzer was to drive said car from Camden Station, of the Baltimore and Ohio Railroad, on and along the track of said railroad company to the station or depot of defendant at President street, and thence on and along the track of defendant to a point east of Albemarle street, and at or about Exeter street, at which said car was to be attached to a train to be made up for transportation to Philadelphia or New York, and that for the purpose of said employment, the employés of defendant, whose duty it was to keep in repair the part of defendant's track, on and along which said Bitzer was to drive said car to said point, were co-employés of said Bitzer, and if they permitted said part of said track to be out of repair, and the death of said Bitzer was caused thereby, the plaintiff cannot recover on account thereof.

5. That if said part of defendant's track was out of repair, the same was obvious to said Bitzer, or he had the opportunity and means of observing the same, for two or three days prior to the occasion of his death, and he made no complaint to the employés of defendant, and no request that the same should be repaired, but continued to use the same in the condition it was, in the course of his employment, he voluntarily assumed the risk of danger in doing so.

6. That said Bitzer contracted for the performance of hazardous duties, to be performed on and along the track of defendant, and if said track was out of repair, and said Bitzer was killed in consequence thereof, the said want of

repair was obvious to him, or he had opportunity to ascertain the same, and his continuance thereafter, to use and drive over said track, and to cut off or detach the horses from the car thereon, whilst said track remained out of repair, was an increased hazard, of which he assumed the risk.

3. That if the jury find from the evidence, that said Samuel Bitzer was an employé, for wages, of the Baltimore and Ohio Railroad Company, and that his duty was, amongst other things, to drive cars from the station of said company over the track of said company, to the President street depot of defendant, and thereon and along the track of defendant, to a point at which said cars were to be attached to engines of defendant, for transportation to Philadelphia or New York, and that his duty was to deliver said cars at said point, and that a part of said duty was to cut off or detach from said cars, the horses drawing the same, at a point or points where the same could be properly done, and that duty was dangerous, he took on himself all the natural risks and perils incident to the service in which he was employed, and the plaintiff cannot recover if said Bitzer were killed by an accident incident to said service.

4. That if the jury find, that said Bitzer was, on the night of 23d July, 1871, and had been for several months prior thereto, an employé, for wages, of the Baltimore and Ohio Railroad Company, to drive cars of said company, over the track of said company, to and on the track of defendant, and for any distance along said track, and to detach the horses from said cars on said track of defendant, and that said duty was hazardous, and that he was engaged in said duty at the time when he was killed, and if the jury find that said employment, and the duties thereof, were hazardous, and that the track of defendant was out of repair for two or three days prior to said death, and that the same increased the hazard of said

Bitzer in said employment, and that want of repair was such as said Bitzer had an opportunity to ascertain, and that he was killed whilst in or about the act of detaching the said horses from a car being driven by him, on the track of defendant, the plaintiff cannot recover in this case.

5. That there has been offered in this case no legally sufficient evidence that the injury complained of in this case, was caused by the negligence of the defendant or its servants, and therefore the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant.

6. That the plaintiff is not entitled to recover in this action, unless the jury shall believe from the evidence that there was negligence on the part of the defendant, or its agents, and shall further believe that without such negligence, the injury complained of would not have occurred.

7. If the jury shall believe from the evidence, that the deceased, Samuel Bitzer, could have, by the exercise of ordinary care and prudence, avoided the injury that resulted in his death, and that he did not exercise such ordinary care and prudence, then their verdict must be for the defendant.

8. That if the jury shall believe from the evidence, that in the year 1871, and at the time of the injury complained of, the defendant, together with other companies, was engaged in a joint enterprise of carrying passengers and their baggage and the mails between New York and Washington, and for that purpose had entered with such other companies into the agreement offered in evidence, (if the jury shall find that said agreement was duly executed,) and that the passenger, baggage and mail cars of said line, run, under said agreement, on their way from Washington northward, were drawn by horse power through Baltimore City from Camden Station to the President Street Depot of defendant, and that it was part of

the duty of the deceased, Samuel Bitzer, by whomsoever of the parties engaged in the said joint enterprise employed, to drive such through cars from Camden Station to the President Street Depot of defendant, and that on the night of July 23d, 1871, while driving a car of said line, the deceased, Samuel Bitzer, received upon the part of defendant's track over which his said duty obliged him to go, the injury which resulted in his death, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant, even if the jury shall believe that the injury was caused by the negligence of defendant's servants.

9. If the jury shall believe from the evidence, that the defendant, together with the Baltimore and Ohio Railroad Company, and other railroad companies was engaged in the joint enterprise of carrying passengers and their baggage, and the mails between Washington and New York, and for that purpose, had formed themselves into a combination, calling said combination the "New York and Washington Through Line," said combination having its own officers and treasury, and accounts kept in its own name, and that the deceased, Samuel Bitzer, met his death while acting as a servant of said Baltimore and Ohio Railroad Company, in furtherance of the object of said combination, then the plaintiff is not entitled to recover, even though the jury may find from the evidence, that there was negligence on the part of defendant's servants, whereby the track of defendant, where the deceased met his death, was defectively constructed, or out of repair.

10. If the jury shall believe from the evidence, that it was part of the duty of the deceased, Samuel Bitzer, by whomsoever employed, to drive cars by means of a team of horses, over that part of defendant's track at President Street Depot, which lay between President and Albemarle Street, and that he had continuously so done for

some time previous to July 23d, 1871, without complaint as to its construction or condition, and that by the use of ordinary observation, he could have been aware of such construction and condition of said part of said track, and that he was so engaged in driving a car over said part of said track, on said 23d day of July, 1871, when he met with the accident which caused his death, then the plaintiff is not entitled to recover, even if the jury shall believe from the evidence that said accident was caused by the improper construction or defective condition of said part of defendant's track.

11. If the jury shall find from the evidence, that it was part of the duty for which the deceased, Samuel Bitzer, was hired, by whomsoever he was so hired, to drive a team with a car from President Street, around a curve into the yard of defendant's depot, and go upon the track in front of said car and detach the horses from said car while still in motion, so that said car, with the impetus it had acquired, should run down the track to its place in a train of which it was to form a part ; and if the jury shall further find that the performance of this part of said Bitzer's duty was necessarily attended with danger ; and if the jury shall further find that for several months before the accident complained of occurred, and up to the time of said accident, the said Bitzer had continuously performed this duty, then the said Bitzer assumed the risk of said danger, and the plaintiff is not entitled to recover in this case, if the jury shall find from the evidence that the said accident occurred in consequence of said risk.

12. If the jury shall find from the evidence that it was part of the duty for which the deceased, Samuel Bitzer, was employed, by whomsoever he was so employed, to drive cars of the "New York and Washington Through Line," run under the agreement offered in evidence, (if the jury shall find that said agreement was duly executed,) through Baltimore City, from Camden Station, and going

over that part of defendant's track where the accident occurred, deliver the same on defendant's track, at or near Exeter Street, and that he was engaged in the performance of that duty at the time he met the injury that caused his death, then the plaintiff is not entitled recover, even if the jury shall believe from the evidence that said injury was caused by negligence of the defendant's servants, either in the construction or condition of that part of defendant's track where the accident occurred.

13. That there can be no recovery in this case for such of the children of Samuel Bitzer, as were at the time of his death, over twenty-one years of age, and not dependent upon him for their support.

14. That if the verdict of the jury shall be for the plaintiff, then in estimating the damages to be awarded to such of the equitable plaintiffs as are entitled to recover damages in this action, the jury can only consider the pecuniary loss resulting to them from the death of the deceased, Samuel Bitzer.

15. If the jury find that said Bitzer was employed by the Baltimore and Ohio Railroad Company for the purpose, amongst others, of driving cars over part of the track of defendant, and was engaged in said employment on the said track of defendant when he was killed, and shall further find that said track was out of repair, and said Bitzer was killed in consequence thereof; and shall also find that defendant at said time, and prior thereto, employed faithful, skillful and competent persons to repair and keep in repair said track, and furnished to said persons so employed abundant suitable materials to repair and keep in repair said track, and that the same was out of repair at the time of said death, by the negligence of said employés of defendant, the plaintiff cannot recover, and the verdict must be for the defendant; and further, that there is no proof that the defendant did not employ faithful, skillful and competent persons to repair and keep

in repair said track, and the fact that defendant did so employ faithful, skillful and competent persons as aforesaid is uncontradicted, and the jury is bound so to find.

16. If the jury shall find from the evidence, that the injury complained of happened in consequence of the negligence of defendant's servants, the burden is upon the plaintiff to show that said servants were unskillful or incompetent, and the plaintiff has given no evidence that they were incompetent or unskillful.

17. If the jury shall believe that the deceased, Samuel Bitzer, had been engaged in driving teams with cars over the track of defendant, between President and Exeter Streets, for sometime previous to the 23rd day of July, 1871, and that the usual and proper place for cutting loose the team of horses from such cars was at Albemarle Street, and that at the time of the injury complained of there was nothing to prevent his cutting loose his team at Albemarle Street, and shall further find, that he did not cut his team loose at Albemarle Street, and that there was greater danger in cutting loose at that point where he did cut loose; and further, that if he had cut loose at Albemarle Street, the injury complained of would not have occurred, then their verdict must be for the defendant.

The Court (HAYDEN, J.,) granted the prayers of the plaintiff, and the sixth, seventh, thirteenth, fourteenth and seventeenth of the defendant, and rejected the first, second, third, fourth, fifth, eighth, ninth, tenth, eleventh, twelfth, fifteenth and sixteenth prayers of the defendant, giving "in lieu of the defendant's third, fourth, tenth and eleventh prayers," the following instruction:

That if the jury find from the evidence, that the said Samuel Bitzer was an employé for wages of the Baltimore and Ohio Railroad Company, and that it was his duty as such employé, (among other things,) to drive a team with a car or cars from the station of said company, over its track to the President Street Depot of the defendant, and

thence on and along the track of the defendant to a point at which said car or cars were to be attached to engine of defendant, for transportation to Philadelphia or New York, and that his duty was to deliver said cars at said point, and that a part of his duty was to cut off or detach the team of horses from said cars while in motion, at a point or points where the same could be properly done; and the said duty was dangerous, than he took on himself and assumed all the ordinary risks and perils incident to said service; and the plaintiff is not entitled to recover in this case, if the jury shall find that the accident which caused his death, occurred in consequence of said risk, and not in consequence of a defect or defects in the defendant's track or road-bed, which the said Bitzer could not, by the use of ordinary care on his part, have seen and avoided.

The defendant excepted. The jury rendered a verdict for the defendant, whereupon the defendant filed a motion in arrest of judgment, based on the following reasons:

1st. Because the equitable plaintiffs, for whose use this action was brought, did not, or did any or either of them, deliver to the defendant or its attorney, together with the declaration, a full particular—of the persons for whom and on whose behalf said action was brought, and of the nature of the claim in respect of which, damages were sought to be recovered, as required by law.

2nd. Because it appears from the record in this action, that no full particular, as set forth in said reason above assigned, was delivered by the equitable plaintiffs, or any or either of them, together with the declaration, to the defendant or its attorney.

3rd. Because it is not alleged in the declaration, that the equitable plaintiffs, for whose use or benefit said action was brought, or any or either of them, were injured by, or sustained injury resulting from the death of Samuel Bitzer, in the declaration mentioned.

4th. Because it is not alleged in said declaration, that the equitable plaintiffs, or any or either of them, sus-

tained, or were, or are entitled to damages on account of, or resulting from said death.

5th. Because it is not alleged in said declaration, that said Sarah E. Bitzer was the wife of said Samuel Bitzer at the time of his said death, in the declaration mentioned.

6th. Because it is not alleged in said declaration, that Franklin Bitzer, Lucy A. Bitzer, William U. Bitzer, James D. Bitzer, Annie E. Beam and Margaret R. Morningstar, or any or either of them, were children of said Samuel Bitzer at the time of his said death.

7th. Because it is not alleged in said declaration, that the said equitable plaintiffs, or any or either of them, were dependent on, or were supported by the said Samuel Bitzer, in whole or in part, at the time of his said death.

8th. Because the said declaration does not set forth any cause of action.

9th. Because the declaration sets forth that said Samuel Bitzer was an employé of the Baltimore & Ohio Railroad Company, to drive cars from the depot of said Company, on Camden street, to the depot of the defendant, known as " President Street Depot," and that whilst engaged in said duty or service, his foot was caught in the imperfect track of defendant. It is not alleged that said Bitzer was employed in, or actually in said service, or that he was in any way on the road or track of defendant at the time of his said death, or when his said foot was caught, as stated in said declaration.

10th. Because it is not alleged in said declaration, that the said Samuel Bitzer was injured or killed, as in said *narr.* alleged, on the road or track of defendant, whilst in said service or otherwise thereon.

11th. Because it is not alleged in said declaration that the death of said Samuel Bitzer was caused by the wrongful act, neglect or default of the defendant.

12th. Because it is not alleged in said declaration, that the wrongful act, neglect, or default of the defendant,

was such as would, if death had not ensued, have entitled said Samuel Bitzer to maintain an action and recover damages in respect thereof.

Wherefore, and for the reasons apparent in the record, the defendant prays that said judgment be arrested.

The Court overruled said motion, and judgment was rendered upon the verdict. The defendant appealed.

The cause was argued before BARTOL, C. J., STONE, GRASON, and IRVING, J.

*John J. Donaldson,* and *Wm. P. Maulsby,* for the appellant.

The first ground of the motion in arrest appears in the first and second reasons filed with it, to wit: that there was no particular delivered as required by Sec. 3 of Art. 65 of the Code.

The first question that arises, is whether this provision is directory or imperative?—for if the last, the action fails by non-compliance with it. "In general, it seems that where a statute confers a privilege or a power, the regulative provisions which it imposes on its acquisition or exercise, are essential and imperative." *Maxwell on Stat.,* 334; *Head & Amory vs. Prov. Ins. Co.,* 2 *Cranch,* 127.

This principle must be applied to this action, for it is brought under a statute, (Article 65 of the Code) which confers a right before unknown. The author above cited goes on to say, "So if the liberty of appealing from a decision is given subject to the fulfillment of certain conditions, such as giving notice of appeal, and entering into recognizances, or transmitting documents within a certain time, a strict compliance with these provisions would be imperative, and non-compliance fatal to the right of appeal." *R. vs. Oxfordshire,* 1 *M. & S.,* 446; *R. vs. Carnarvon,* 4 *B. & A.,* 86; *R. vs. Bond,* 6 *A. & E.,* 905; *R. vs. Lancashire,* 8 *E. & B.,* 563; *R. vs. Lancashire,* 27 *L.*

*J. M. C.,* 161; *Morgan vs. Edwards,* 5 *H. & N.,* 415; *Woodhouse vs. Woods,* 29 *L. J. M. C.,* 149; *Ex. parte Lowe,* 3 *D. & L.,* 737; *R. vs. Worcestershire,* 15 *L. J. M. C.,* 99.

And in this State, the same principles have been again and again applied, especially in the case of the Mechanics' Lien and Attachment Laws. *Matthews and Zollickofer vs. Dare and McClure,* 20 *Md.,* 248; *Evesson, agent, vs. Selby and Polk, Garn.,* 32 *Md.,* 340; *Mears vs. Adreon, et al.,* 31 *Md.,* 229; *Sodini & Leiter vs. Winter, et al.,* 32 *Md.,* 130; *Risewick vs. Davis, Garn.,* 19 *Md.,* 82; *McPherson, et al. vs. Snowden, et al.,* 19 *Md.,* 197; *Hess, Reid, et al. vs. Poultney & Brown,* 10 *Md.,* 257; *Brown vs. Somerville,* 8 *Md.,* 444.

And this very law has been held by this Court to be wholly at variance with the common law, and hence gives entirely new rights. *State, use of Allen vs. P. & C. R. R. Co.,* 45 *Md.,* 41; *Blake vs. Midland Rw.,* 10 *Eng. L. & E.,* 443.

But if a fatal defect, how is a defendant to take advantage of it? Certainly not by demurrer, for the pleadings are complete without it. *Scott vs. Leary,* 34 *Md.,* 400–1. If the defect could not be met by demurrer, it is not cured by verdict. *Article 64, section 71, of the Revised Code of* 1878.

Could the defendant have moved to quash the writ? Clearly not, for the writ is regularly issued on the mere order of plaintiff's attorney before any pleadings are filed. *Evans' Prac.,* 93. The only course remaining then that could have been taken, is that which was taken, viz., a motion in arrest.

If, however, that be not the proper way to raise the question, it is before this Court on the appeal, being an error apparent on the face of the record, as fully as if upon writ of error. *Rules of Court of Appeals, Rule* 1; *Cumberland Coal and Iron Co. vs. Jeffries,* 21 *Md.,* 375.

Phila., Wilm. & Balto. R. R. Co. *vs.* State, use of Bitzer, *et al.*

The point was raised, even if not in the proper way, in the Court below. 1 *Poe on Pleadings*, 669. It cannot be contended that the defect was waived by pleading to the declaration. Undoubtedly this would be so in an ordinary action of *assumpsit*, &c., where, under the Maryland common law practice, and Rev. Code, Art. 64, secs. 84, 107, the defendant has the right to. *demand* a bill of particulars. Under Rev. Code, Art. 67, XV, sec. 3, the defendant is not entitled to demand it, and therefore has no right to waive. The requirement to deliver a particular is a peremptory statutory requirement as to the mode of enforcing a new right given by the statute, which can only be taken advantage of by following the method called for by the statute.

The *narr.* discloses no cause of action. It does not show that deceased's duty brought him on the track of defendant where the injury occurred, nor does it state any other facts that would make it the duty of defendant *toward deceased* to have a perfect track. *Winterbottom vs. Wright*, 10 *Mee. & W.*, 109; *Seymour vs. Madox*, 16 *A. & E., N. S.*, 326; *Southcote vs. Stanley*, 1 *H. & N.*, 247; *Sullivan vs. Waters*, 14 *Ir. C. L., N. S.*, 460.

And the general allegation of negligence does not remedy the otherwise insufficient statement of the cause of action.

The verdict works no cure in such a case as this. *B. C. P. R. R. Co. vs. Sewell*, 35 *Md.*, 250; *Merrick vs. Bank of the Metropolis*, 8 *Gill*, 75; *Lohrfink vs. Still*, 10 *Md.*, 530; *McDonald vs. Hobson*, 7 *How.*, 758; *Barrett vs. Fletcher, Cro. James*, 220; 1 *Poe on Pleading*, 664.

Assuming that there was negligence on the part of defendant in its track being out of repair, (there was no proof that it had not been originally properly constructed,) there is no proof whatever that such non-repair was the cause of the accident.

The jury should not be allowed to speculate that such or such *might* have been the cause of the injury, but it

must be proved that it *was.* *N. C. Ry. Co. vs. State, use of Burns,* 54 *Md.,* 113; *State, use of Hamelin vs. Malster,* 57 *Md.,* 287; *Phelps vs. Rw. Co.,* 21 *L. T., N. S.,* 443; *B. & Pot. R. R. vs. State, use of Stansbury,* 54 *Md.,* 656–7.

From the plaintiff's testimony it would appear that its theory of the accident was that it was caused by a standing spike, or a hole in the woodwork around this spike, though it was expressly contradicted by those witnesses who examined the *locus in quo* on the day of the accident, that there was no such thing, or anything there to trip deceased.

There is nothing to prove that this spike or hole, if indeed it had been proved that either was there at the time of the accident, was the *cause* of the injury—nothing to connect the two. *Burns' Case,* and others, above cited.

Further, it must be shown that defendant's negligence was the *causa sine qua non* of the accident. *B. & O. R. R. Co. vs. State, use of Trainor,* 33 *Md.,* 542; *Carter vs. Towne,* 103 *Mass.,* 507; *Ins. Co. vs. Tweed,* 7 *Wall.,* 44, 52; *Bigelow L. C. Torts,* 610 and notes.

Moreover, on the evidence, defendant was under no duty *to deceased* to provide a safe track. *Winterbottom vs. Wright,* 10 *Mee. & W.,* 109.

Deceased was, within the meaning of the rule, a co-employé with defendant's servants, whose duty it was to keep the track in repair, and consequently there can be no recovery. *Cruty vs. Erie R. R. Co.,* 3 *N. Y., S. C.,* (*T. & C.,*) 244.

By the agreement, the appellant, with the Baltimore and Ohio Railroad Company and others, entered into a partnership for the purpose of carrying on a common enterprise. For the conduct of this it was as essential that appellant's servants should keep in order the track where the accident occurred, as that the Baltimore and Ohio Railroad Company should have drivers and teams to deliver the cars to appellant. All those who were so

Phila:, Wilm. & Balto. R. R. Co. *vs.* State, use of Bitzer, *et al.*

engaged in furthering the objects of this common enter-
prise, were servants of the partnership, and hence co-
employés.   Even though their wages were paid in the
first instance by the several companies engaging them,
yet they were in the result paid by the partnership in
the mileage allowed to each Company.   *Waland vs.
Elkins*, 1 *Starkie*, 272; *Fremont vs. Coupland*, 2 *Bing.*,
170; *G. W. Rw. vs. Blake*, 7 *H. & N.*, 995; *Thomas vs.
Rhymney Rw.*, *L. R.*, 6 *Q. B.*, 272.

These servants belonged to a common establishment,
viz., the "New York and Washington Through Line"
partnership; and belonging to such a common establish-
ment is one of the crucial tests for the application of the
rule.   *Morgan vs. Vale of Neath Rw.*, *L. R.*, 1 *Q. B.*, 149,
155.   A party may be the general servant of one, paid
and employed by him, and yet, for the time being, the
servant of another.   *Vary vs. Burlington, &c. R. Co.*, 42
*Iowa*, 246; *Rourke vs. Whitemoss Coll. Co.*, 2 *C. P. Div.*,
205, 210; *Kimball vs. Cushman*, 103 *Mass.*, 194.   So here,
deceased, while on defendant's track, driving this car to
its place, was the servant of the partnership or of the
defendant, and not of his general employer, the Baltimore
and Ohio Railroad Company.   But the rule is not con-
fined to those who are in strictness co-employés, but
applies to any one who enters upon and continues in an
occupation which he must know will expose him to such a
risk.   *Illinois, &c. R. R. vs. Cox*, 21 *Ills.*, 20; *Wiggett vs.
Fox*, 11 *Exch.*, 832, 837; *Johnson vs. Boston*, 118 *Mass.*,
114; *Harkins vs. Standard Sug. Ref.*, 122 *Mass.*, 400;
*Howells vs. Landore, &c. Co.*, *L. R.*, 10 *Q. B.*, 62; *Sey-
mour vs. Madox*, 16 *Q. B.*, 326; *Southcote vs. Stanley*, 1
*H. & N.*, 247; *Sullivan vs. Waters*, 14 *I. R.*; *C. L., N. S.*,
460; *Woodley vs. Met. Railway*, 2 *Exch. Div.*, 384.   The
rule does not depend on contract.   *Riley vs. Baxendale*,
6 *H. & N.*, 445.

The same law has been repeatedly held of a volunteer.
*Degg vs. Midland Railway*, 1 *H. & N.*, 773; *Potter vs.*

*Faulkner,* 1 *Best & S.,* 800, 806; *Flower vs. Pa. R. R. Co.,* 69 *Penna. St.,* 210.

If the defects were apparent, and deceased yet continued to use the track without complaint, there can be no recovery. *Dynen vs. Leach,* 26 *L. J.,* 1857, *N. S.,* 26 *Ex.; Searle vs. Lindsay,* 103 *E. C. L. R.,* 438–9; *Assop vs. Yates,* 2 *H. & N.,* 768; *Skipp vs. E. Co's Rw.,* 9 *Exch.,* 223; *Griffith vs. Gidlow,* 27 *L. J., N. S. Ex.,* 404; *Mich. Cent. R. R. vs. Austin,* 40 *Mich.,* 247.

Deceased was guilty of contributory negligence *in law.* The deceased chose to perform a dangerous duty in an especially dangerous way. How it was usual to do it is fully shown by the testimony in the record, and the prudent course is shown by the testimony of Mullen. The course taken by deceased clearly brings the case within the principle decided by this Court. *Lewis vs. B. & O. R. R. Co.,* 38 *Md.,* 392. See also *Williams vs. Iowa Cent. Rw.,* 43 *Iowa,* 396; *Felch vs. Allen,* 98 *Mass.,* 572; *Owen vs. R. R. Co.,* 1 *Lans.,* 108; *Bolch vs. Smith,* 7 *H. & N.,* 736.

The Court's instruction was said by the Court to be given "in lieu of the defendant's third and fourth, tenth and eleventh prayers," which were rejected. Under this, then, there arise three questions, viz., (*a.*) Were those prayers of the defendant objectionable? (*b.*) If not, does the Court's instruction cover the same ground? And (*c.*) Is it good law?

*a.* The defendant's third prayer simply states, as matter of law, that if the duty was dangerous, deceased took upon himself all the *natural* risks and perils incident to its performance; and if his death occurred owing to an accident *incident* to that employment, there can be no recovery. It certainly seems impossible to state the law with regard to dangerous employments more accurately. It will be observed that the prayer does not undertake to discharge the defendant from liability for injury caused by its negligence. *Gibson vs. Erie R. R. Co.,* 63 *N. Y.,* 449;

*B. & O. R. R. Co. vs. Stricker,* 51 *Md.,* 47; *Owen vs. R. R. Co.,* 1 *Lans.,* 108.

The defendant's fourth prayer presents the question of contributory negligence in not being aware of the defective condition of the track, if it had existed for three or four days previous to the accident, or if he was aware of it, in not using his knowledge for his own protection. This prayer correctly states the law as laid down by this Court.

Those who come, whether in the course of duty or otherwise, into dangerous places, are bound to use their senses. *State, use Foy vs. P., W. & B. R. R. Co.,* 47 *Md.,* 76; *Senior vs. Ward,* 1 *E. & E.,* 385.

The defendant's tenth prayer goes to the question of deceased's continuous use of the track *without complaint.* It is clear law that where one, in the course of his duty or otherwise, whether as servant of the owner or otherwise, continuously comes upon the premises of another, if he has the same means of knowing their condition as the owner, and makes no complaint as to its dangers, there can be no recovery. *State, use of Hamelin vs. Malster & Reaney,* 57 *Md.,* 287.

The defendant's eleventh prayer presents the question raised by the third, with this difference, that it requires the jury to find that deceased had, for several months, performed the duties recited. If the jury so found, his acquaintance was so much the more thorough with its risks; and if the third prayer was good law, so *a fortiori* was the eleventh. *Woodley vs. Metrop. &c. Rw.,* 2 *Exch. Div.,* 384.

These prayers then present four utterly distinct questions of law. Are they all raised by the Court's instruction? It would seem to raise the question presented by the defendant's third prayer, and, possibly that contained in the fourth, though it cannot be said to cover it because it omits important facts appearing in the record, (and in

the fourth prayer,) going to deceased's means and oppor-
tunities of knowledge, and hence could not furnish as
clear a guide to the jury. It does not cover the defend-
ant's tenth prayer, as it leaves out the question of con-
tinuous user *without complaint*. Further, it does not cover
defendant's eleventh prayer, because it leaves out the fact
that deceased had, for several months before the accident,
continuously performed this duty—a fact going most ma-
terially to the question of his knowledge, and hence to
the defendant's liability.

If any of the defendant's rejected prayers, other than
the third and fourth, tenth and eleventh. are good law,
the Court's instruction should not have been given. It is
further defective in that the latter part of it goes merely
to the question of deceased's seeing and avoiding the
defects in the roadway, if such existed at the time of the
accident. It therefore raises the question of contributory
negligence, apparently only in the fact of the accident, or
at least is open to that construction by the jury, and so
objectionable as misleading. In conclusion, if it does not
cover the questions, or leave the jury to find the facts
recited in the defendant's third and fourth, tenth and
eleventh prayers, and those prayers are good law, the
Court's instruction is not.

The plaintiff's first prayer falls, of course, if the de-
fendant's prayers with regard to lack of evidence, co-
employment, the voluntary assumption of the risk of
negligence of defendant's servants, the continued use of
the track without complaint and contributory negligence
in law, or any of them, should have been granted. The
prayer goes to the whole case, and is misleading as not
putting to the jury some of the most material facts and
circumstances proved—*e. g.* the length of deceased's
employment in this duty; its danger; that there were
safer ways of performing it, &c., &c.; and there is nothing
in any of the prayers that were granted on either side, to

remedy the omissions, or to qualify the too broad statement of the law contained in this prayer. It is further misleading, in that it does not require the jury to find that deceased was employed by a third outside party—*e. g.* the B. & O. R. R. Co. It merely says, "if they shall find from the evidence that Samuel Bitzer was the driver of a car in use on the road of defendant, in pursuance of the written agreement given in evidence." These facts, if found, are perfectly consistent with his being the directly employed and paid servant of the *defendant*, or of the "New York and Washington Through Line" partnership, or a volunteer—in none of which cases could there be a recovery for negligence of defendant's servants. It states no facts from which a duty can be raised from defendant to deceased to keep the track in repair. *Winterbottom vs. Wright*, 10 *M. & W.*, 109 ; *Seymour vs. Maddox*, 16 *A. & E.*, *N. S.*, 326 ; *Southcote vs. Stanley*, 1 *H. & N.*, 247 ; *Sullivan vs. Waters*, 14 *I. C. L.*, *N. S.*, 460.

*Joseph C. Boyd, T. Kell Bradford*, and *John H. Handy*, for the appellee.

It is not essential for the plaintiff to file a full particular, &c., as mentioned in the statute, in manner and form as suggested by the defendant, unless such particular, &c., should be required and demanded by the defendant. The Maryland Act, is in this respect, an exact copy of Lord Campbell's Act, (9 and 10 Victoria, ch. 93,) and has been fully construed in *Murphy vs. Logan*, 10 *Irish Law R.*, *N. S.*, 87, and 10 *Irish Com. Law*, 87, and also in *McCabe vs. Guinness*, 9 *Irish R.*, *Com. Law*, 510.

The defendant does not show any breach of, or non-compliance with, any provision of the statute applicable to the case.

The declaration itself is sufficiently particular, embracing as it does a full description of the persons for whom and on whose behalf the action was brought, and the

nature of the claim, in respect of which, damages were sought to be recovered, and the Act itself contemplated nothing more. It has been well settled, in the cases which have construed the Act, that this provision of it, is simply directory, and not mandatory; and similar to bills of particulars in all other cases; when furnished, its only office and effect is to restrict the plaintiff's proof, and limit his recovery to the claim as therein stated. *B. & O. R. R. Co. vs. State, use of Woodward,* 41 *Md.,* 268.

If the defendant felt embarrassed as to any vagueness in respect of the plaintiff's case, and required fuller particulars, he should, before pleading to the declaration, have called upon the plaintiff to furnish them, and the Court would have compelled their delivery. It is well settled law, that if the defendant pleads to the declaration, he will be held to have waived his right to the particulars of the plaintiff's demand. *Randall vs. Glenn,* 2 *Gill,* 430; *Poe's Pleading,* 88. It is equally well settled, that a bill of particulars does not constitute a part of the record. *Murphy vs. Logan, (supra,)* and as a motion in arrest of judgment lies only for matters apparent on the face of the record, it is manifest that the absence of a bill of particulars cannot be taken advantage of in this way. *Poe's Pleading,* 658.

There is nothing in the record that would justify the Court in finding that no full particular, as required by the statute, had been furnished the defendant.

The plaintiff's first prayer is a plain legal statement of the facts of the case, unobjectionable on any grounds.

The second prayer of the plaintiff, is a substantial copy of that granted in the case of the *Balto. & O. R. R. Co. vs. State, use of Woodward,* 41 *Md.,* 268, 272; *B. & O. R. R. Co. vs. State, use of Trainor,* 33 *Md.,* 542, and the third prayer is an exact transcript of that granted in *State, use of Geis vs. Northern Cent'l R. R. Co.,* 31 *Md.,* 359.

The defendant's first. prayer would take the whole case from the jury, and is too general.    *Wheeler vs. State, use of Bateman, Adm'r*, 7 *Gill*, 343.

With regard to the first part of the second prayer and the fifth prayer, the plaintiff proved that the deceased was thrown upon the track by the car and killed, and that this was caused by his having apparently caught his foot in the track; and also that at or about that time the defendant's track was in a defective condition, having rotten woodwork with spikes sticking up, &c.    It is submitted, that with this evidence before it, it would have been a glaring error in the Court to grant these instructions.

For the same reason that it would have been equally an error for the Court to have granted the second and third portion of the defendant's second prayer, as there was evidence to show that the place where deceased cut off the horses from the car, was a usual and customary place, and was perfectly consistent with the use of ordinary care and prudence upon his part; but in any event the full amount of law to which the defendant was entitled upon this point, was contained in its seventeenth prayer, which was granted by the Court.

As regards the last two sections of the second prayer, and the tenth prayer, it is submitted that they contain grave errors, and were properly refused by the Court. There was no evidence that the deceased was ever aware of any defects in the track or road-bed, and, it is submitted that it would be most extraordinary and unreasonable to require the driver of the car, who is already engaged in a most dangerous occupation, to still further augment his danger by being required to be constantly on the watch to see that the road-bed was in perfect order; the deceased certainly had the right to presume and expect that the track of the defendant was in a proper condition, situated as it was in its depot.    The effect of

granting this instruction would have been to make the deceased responsible for the negligence of the defendant— a monstrous doctrine, utterly unsupported by authority. The instruction, in fact, virtually asked the Court to instruct the jury as a matter of law, that the defendant was guilty of want of ordinary care and prudence. *Snow vs. Housatonic R. R. Co.*, 8 *Allen*, 441; *Dale vs. St. Louis R. R. Co.*, 63 *Mo.*, 455; *Thompson on Negligence, page* 1012.

The only remaining question is raised by the fourth part of the second prayer, the eighth, ninth, twelfth, fifteenth and sixteenth prayers, and is confined to the one inquiry—was the deceased a co-employé with the employés of the defendant, whose duty it was to attend to the condition of its track and road-bed? upon which point we think the authorities will be found conclusive.

"Mere co-operation or community of labor and ultimate purpose, is not enough to make men fellow-servants. They are not fellow-servants unless they are all under the control of a common master. Wherefore a servant of a railroad company employed in its service upon a section of road used by it in common with another corporation, under a mutual contract between the companies, may recover damages against that corporation for injuries sustained by reason of the negligence of its servant. And where one corporation hires from another the use of its track, a servant of the former can recover from the latter for any injury caused by defects in the track." *Shearman & Redfield on Negligence, page* 130, *sec.* 101; *Snow vs. Housatonic R. R. Co.*, 8 *Allen*, 441; *Graham vs. N. E. R. R. Co.*, 18 *C. B.. (N. S.,)* 229; *Sawyer vs. Rutland R. Co.*, 27 *Vermont*, 370; *Warburton vs. Gt. Western R. R. Co.*, 2 *Exch.*, 30.

There is no sound reason on which the servants of one master can be treated as fellow-servants with the servants of another master. The rule which exempts a master

Phila., Wilm. & Balto. R. R. Co. *vs.* State, use of Bitzer, *et al.*

from liability for an injury inflicted by one of his servants upon another, is based upon an implied contract, between a servant and his master, that the former will accept all the natural and ordinary risks incident to the business in which he is engaged, which include the negligence of those whom the master may associate with him. In this view of the reason of the rule, it is a rule based upon a privity of contract. A, when he enters into the service of B, impliedly says to B, "you having selected fit and competent servants to work with me, I assume the risk of injuries from their negligence." But he does not say, "I assume the risk of injuries from the negligence of the servants of C, D, or E, in connection with whom I may be obliged to work." Again, if the rule is not supposed to rest in an implied contract, but to be one founded solely in public policy, the object being to make all fellow-servants interested in watching over each other, how can it be applied to the servants of different masters? What possible duty can the servant of A be under to watch over the servant of B, to intermeddle with his work and report his delinquencies? Undoubtedly he owes such duty to his own master, but upon what principle can he be charged with such a duty to a stranger? *Thompson on Negligence, page* 1043, *note ; Smith vs. New York &c. R. R. Co.,* 19 *N. Y.,* 127 ; *Sawyer vs. Rutland, &c., R. R. Co.,* 27 *V t.,* 370.

As to the refusal by the Court, of the defendant's third, fourth, tenth, and eleventh prayers, and the instruction given in lieu thereof, this was a proper and legal ruling, and it would have been error in the Court to have granted them, inasmuch as all of them were calculated to mislead the jury, and defective in that they were based upon false hypotheses, and presented only a partial enumeration of the facts essential to their soundness, and omit elements necessary to constitute a good prayer; and further, that the instruction embraces all the law to which the defend-

ant was entitled. *Bosley vs. Chesapeake Ins. Co.*, 3 *G. & J.*, 450.

GRASON, J., delivered the opinion of the Court.

At the trial of this case, in the Circuit Court for Carroll County, exceptions were taken by the appellant to the granting of the three prayers of the appellee, as well as to the rejection of all its prayers, except the seventh, thirteenth, fourteenth and seventeenth, as also to the instruction given by the Court in lieu of the third, fourth, tenth, and eleventh. A motion in arrest of judgment was also filed, which was overruled, and we will dispose of that before considering the prayers.

The motion is based on twelve reasons, which are especially assigned in the motion filed.

The first and second reasons assigned are, that the appellee did not comply with the third section of Article 65 of the Code, under which the suit is brought, by delivering, with the declaration, to the defendant, or its attorney, a full particular of the persons for whom and in whose behalf the action was brought, and the nature of the claim in respect of which damages were sought to be recovered. The object of this section of the Code was to have the defendant furnished with information, which would enable it to plead to the declaration and make its defence to the suit. In the case of *The Baltimore and Ohio Railroad Company vs. The State, use of Woodward,* 41 *Md.*, 297, this Court has said that the particular, when furnished, is intended for the same purpose and has the same effect as a bill of particulars in other cases, and restricts the plaintiff's proof and limits his recovery to the claim therein stated. The particular is to be given to the defendant for his own benefit, and, as the defendant in this case did not demand it, but filed its pleas without it, it may be considered as having waived its right to have it. But we do not think that this section is mandatory. The

right of action existed before the declaration was filed, and, in this case, the declaration, when filed, stated the names of the parties for whose use the suit was brought, and described them as the widow and children of Samuel Bitzer, deceased; stated particularly the injury to, and consequent death of, Samuel Bitzer, and the nature and amount of their claim, and it is difficult to conceive what more particular statement could have been furnished to the defendant. The 65th Article of our Code seems to have been copied from Lord CAMPBELL's Act of 9 and 10 Victoria, ch. 93, and sec. 4 of that Act has been construed in the case of *Murphy vs. Logan*, 10 *Irish Com. Law*, 87. In that case no particular had been furnished or delivered to the defendant, and that fact was pleaded in bar of the action. To this plea a demurrer was interposed and PERRIN, Judge, in delivering the opinion of the Court, said, that the delivery of a particular to the defendant was "a requirement merely in accordance with the rules and practice of the Court in which the action may be depending. But the right of action accrues prior to the issuing of the declaration, and exists altogether independently of the fact of the declaration being issued or not. If the defendant require particulars, he should call upon the plaintiff to furnish them; or, in case of his refusal, apply to the Court to compel him to do so and the demurrer was sustained."

The requirement to deliver a "particular," as provided by sec. 3 of the Code, is merely directory, and in nowise affects the right of the plaintiff to maintain the suit. It is no part of the record; is not even required to be filed, but merely delivered to the defendant or its attorney. Motions in arrest are for matters apparent on the face of the record, and for this reason, as well as for those before stated, the first and second causes assigned, furnish no ground for sustaining the motion. The declaration alleges that Sarah Bitzer is the widow, and the other

equitable plaintiffs are the children of Samuel Bitzer, that his foot was caught in the imperfect track of the defendant through the wrongful act, default or neglect of the defendant, and not through his own default or negligence, that he was thereby thrown down and the car crushed beneath its wheel truck and body, the left leg and body of said Samuel Bitzer in a horrible manner, thereby causing his death, and the plaintiff claims ten thousand dollars. The declaration, therefore, contains sufficient averments in substance that Samuel Bitzer was rightfully on the defendant's road in his lawful employment; that the latter's road was imperfect through its negligence, and that said Bitzer though not negligent himself had his foot caught in the imperfect track of the defendant, and that in consequence thereof the cars which he had in charge, ran over him, and caused his death, for which the equitable plaintiffs claim ten thousand dollars damages for the loss sustained by them, in consequence of his, the said Samuel Bitzer's death.

It was not necessary to allege that the defendant's negligence was such that, if death had not ensued, Samuel Bitzer himself would have been entitled to recover for the injury done him. There was nothing therefore in any of the other reasons assigned, which furnished any ground for sustaining the motion in arrest, and it was therefore properly overruled.

The three prayers granted at the instance of the appellee, state the law with respect to negligence and the measure of damages, as it has often been heretofore announced by this Court, in cases arising under the 65th Article of the Code, and no valid objection can be urged against them, and there is evidence in the record to support them, and which was properly submitted to the jury, and they were rightly granted. There was no evidence of any such gross or glaring neglect on the part of Samuel Bitzer, as would justify the Court in saying that it amounted in law to contributory negligence. The evidence of negligence

on the part of the appellee as well as on the part of the appellant was conflicting, and it was properly left to the jury whose peculiar province it was to consider, and pass upon it. The appellant's first prayer was, therefore, properly refused.

The appellant's second prayer seeks an instruction that the appellee was not entitled to recover for the various reasons especially assigned therefor. All these reasons, except the fourth, have been disposed of in what we have said with respect to the reasons assigned in the motion in arrest and the appellant's first prayer. The fourth will be disposed of in connection with the appellant's eighth, ninth, twelfth, fifteenth and sixteenth prayers. They are all based on the theory, that if the appellant's track was out of repair and imperfect through its own neglect, and that in consequence of such imperfect condition of its track, Samuel Bitzer lost his life, that still the appellee was not entitled to recover, because the said Bitzer was a co-employé of the appellant's employés. This theory is based upon the agreement, set out in the record, between the New Jersey Railroad and Transportation Company, the Camden and Amboy Railroad and Transportation Company, the Philadelphia and Trenton Railroad Company, parties of the first part, the Philadelphia, Wilmington and Baltimore Railroad Company, the appellant, of the second part, and the Baltimore and Ohio Railroad Company of the third part. This agreement was entered into for the purpose of securing comfort, speed and safety in the through passenger travel between New York and Washington, and to secure harmony of action between said parties to accomplish that object. Whatever effect this agreement might have upon the parties to it, it could not have any upon strangers to it, nor alter nor change the relations of either of them towards third parties, nor have the effect of making those, who were employed and paid wages by either of the contracting parties, the co-

employés of the agents and workmen of the other parties, nor make the others liable, either severally or jointly, for any loss or damage caused by the neglect of any one of them, even had the agreement been silent in this respect. But in order to guard against any such result the agreement itself expressly provides, that "if an accident shall happen whereby damages to persons or property shall be incurred, the party on whose road the same shall happen shall alone be responsible." The road on which the accident, which is the cause of this suit, happened, is admitted to be the road of the appellant. The principle invoked in favor of the fourth reason, assigned in support of the first prayer and also in support of the eighth, ninth, twelfth, fifteenth and sixteenth prayers is, that every employé assumes the risk of the negligence of his co-employés. Samuel Bitzer was not employed or paid by the appellant, but was employed by the Baltimore and Ohio Railroad Company, and therefore this principle is not applicable to him, and, consequently, the fourth reason assigned in support of the first prayer cannot be maintained, and that prayer, as well as the eighth, ninth, twelfth, fifteenth and sixteenth prayers were properly rejected.

The fifth prayer was rightly refused for the same reason we have assigned for affirming the Court's ruling upon the first prayer, and that is, that there was evidence from which the jury were at liberty to find that the death of Samuel Bitzer was caused by the negligence of the appellant's agents.

The jury had been instructed by the appellee's first prayer that they must find negligence on the part of the appellant, or its agents, in order to find a verdict for the appellee, and therefore the appellant had, under that instruction, obtained all that was asked by its sixth prayer, and there was therefore no error in rejecting it.

The third, fourth, tenth and eleventh prayers, we think, were well calculated to mislead the jury. They

26                    v. 58.

contain the proposition that if Samuel Bitzer had been in the habit of driving cars over the track of the appellant for some time before his injury, and that, if that business was dangerous, and that part of his duty was to cut off or detach the cars at a point where the same could be properly done, and had done so without complaint of the condition or construction of the road or track, and that with the use of ordinary observation he could have been aware of its condition and construction, he took on himself the risk of such employment, and the appellee was not entitled to recover. If these prayers had been granted, the jury, although they may have believed from the evidence that Bitzer came to his death by having had his foot caught by a spike, or his heel fastened in a hole, in the appellant's road, which it was its duty to keep in good condition, might have supposed that such accident was a risk incident to the employment in which he was engaged. The Court did right in refusing these prayers; and the appellant has no just cause to complain of their rejection, because the Court, by the instruction given in lieu of them, told the jury, if they found substantially all the facts enumerated in those prayers, that then "the plaintiff is not entitled to recover in this case, if the jury shall find that the accident which caused his (Bitzer's) death, occurred in consequence of said risk, and not in consequence of a defect or defects in the defendant's track or road-bed, which the said Bitzer could not, by the use of ordinary care on his part, have seen and avoided." This instruction placed all the facts fairly before the jury from which they were at liberty to find either for the appellee or the appellant, as they might find that either the appellant or Bitzer had been guilty of negligence.

Finding no error in the rulings of the Circuit Court, the judgment appealed from will be affirmed.

*Judgment affirmed.*