THOMAS J. HICKEY vs. MERCHANTS AND MINERS TRANS-
PORTATION COMPANY.

Suffolk.   March 13, 1890. — June 21, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Negligence.*

In an action for personal injuries against a steamship company which had under-
taken to load a lighter alongside its wharf with cotton, there was evidence that
its employees in wheeling the bales on board the lighter were to act under the
direction of its stevedore, but in throwing them through a hatch into the hold
under that of an officer of the lighter; and that such an employee wheeled a
bale upon the lighter, and, without receiving or waiting for any orders from such
officer, threw it into the hold and injured the plaintiff. *Held*, that there was
evidence that the employee in throwing the bale of cotton acted as the defend-
ant's servant, and that the defendant was liable for his negligence.

TORT for personal injuries occasioned to the plaintiff, by the
fall upon him of a bale of cotton, through the alleged negligence
of a servant of the defendant.   Trial in the Superior Court, be-
fore *Blodgett*, J., who allowed a bill of exceptions, in substance
as follows.

There was evidence that before the accident the defendant cor-
poration, which owned a line of steamships running between Bos-
ton and Southern ports, had made an agreement with a lighter
company for the transfer of cotton from the defendant's wharf
to another point in Boston Harbor; that by this agreement the
defendant, in unloading cotton from its ships, was to pile up the
cotton on the cap or outer edge of its wharf, or put it on board a
lighter directly, according to which was the most convenient for
it; that the work of piling the cotton upon the wharf or of wheel-
ing it upon trucks on board a lighter was done by employees
of the defendant, who were hired and paid by it; that on the
night of November 23, 1888, the date of the accident, the de-
fendant had undertaken to unload cotton from one of its steam-
ships then lying at its wharf, and to load it upon a lighter lying
upon the other side of the wharf, and about one hundred of its
employees were engaged in wheeling the cotton on trucks di-
rectly out of the ship and over the wharf to the hatch of the

lighter, and in throwing it into the hold of the lighter; that at that time there were employed upon this lighter by the lighter company, a captain, an engineer named Barter, and six men; that these men, among whom was the plaintiff, were stationed in the hold, three upon each side of it; that the engineer's duty at the time was to stand at the hatch leading to the hold, to direct the employees of the defendant into which side of the hold to throw the cotton, and at what time each bale should be thrown, and to warn the men in the hold and to await an answer from them before assisting to throw the bale into the hold; that it was the duty of the men in the hold, after being thus warned and when the bale was thrown down, to go to the place where the cotton fell, and to remove the cotton from that place and to stow it away; that these employees of the defendant, while upon the defendant's ship and wharf and the deck of the lighter, were acting under the orders of the defendant's stevedore, except that as to the time, place, and manner of depositing the cotton through the hatch into the hold they were from the time they entered upon the deck of the lighter until they returned to the defendant's wharf acting under the direction and control of the officers of the lighter company; that one of the defendant's employees named Marks, after wheeling a bale of cotton from the wharf upon the lighter, and without "being told or in any way ordered to do so by said Barter, or by any other person, and without any warning being given to the men in the hold either by him or any other person, and before the said Barter could prevent the throwing of said bale, or could give any warning to the men in the hold, or either of them," threw a bale into the hold, and the plaintiff, not having been warned, was struck and injured.

On the above facts, the judge ruled that there was no evidence upon which the jury would be warranted in finding a verdict for the plaintiff, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*W. H. Gove*, (*S. A. Fuller* with him,) for the plaintiff.

*R. Stone*, for the defendant.

FIELD, J.   The contention of the plaintiff is, that he was hurt through the negligence of one Marks, and that Marks was the servant of the defendant. The ruling of the court was, in

effect, that there was no evidence for the jury that Marks was acting as the servant of the defendant when he threw the bale of cotton by which the plaintiff was hurt into the hold of the lighter.   Marks was hired by the defendant, and wheeled the cotton into the lighter by the direction of the stevedore of the defendant.   It was the duty of Marks, under the arrangement which existed between the defendant and the lighter company, to take the direction of some agent of the lighter company " into which side of the hold the cotton should be thrown, and at what time each bale should be thrown."

The plaintiff was a servant of the lighter company, and was at work in the hold stowing the cotton, and in the performance of his duty it was necessary that he should go to the place where the cotton fell when thrown into the hold, and he relied upon being warned by some one on deck when the cotton was to be thrown into the hold.   Barter, the engineer of the lighter company at the time the accident happened, was standing by the side of the hatch for the purpose of directing the servants of the defendant when and where they should throw in the cotton, and for the purpose of warning the servants of the lighter company in the hold when and where the cotton would be thrown in.   There was evidence that Marks carried this particular bale of cotton on a truck from the wharf into the lighter, and threw it at once into the hold without "being told or in any way ordered to do so by said Barter, or by any other person, and without any warning being given to the men in the hold either by him or any other person, and before the said Barter could prevent the throwing of said bale, or could give any warning to the men in the hold, or either of them."   We think that there was evidence for the jury that Marks continued to be the servant of the defendant until after he threw the bale of cotton into the hold.   There was evidence that he did not, in fact, put himself under the control of the officers or agents of the lighter company, and that in throwing the bale into the hold he was not in fact acting under their directions.   The defendant had undertaken the duty of putting the cotton on board the lighter, and of throwing it into the hold.   Marks was the defendant's servant, and until the bale was thrown in it had not passed out of his possession, which was the possession of the defendant.   If

at the moment before he threw it in he had been ordered by the defendant's stevedore not to throw it in, but to wheel it back to the wharf, it would have been his duty to obey. It was only for a few moments that the servants of the defendant, if they submitted to the control of Barter, would be under his control, and then only to the extent of obeying his directions as to the place in the hold where, and the particular time when, the cotton should be thrown into the hold.    There was evidence that Marks, in throwing in this particular bale, acted on his own judgment, and was not acting under the control of Barter, and that he, in effect, neglected to obey the directions of the stevedore of the defendant in not submitting himself to the control of Barter as to the time and place of dumping the cotton.

See *Warburton* v. *Great Western Railway*, L. R. 2 Ex. 30; *Blaikie* v. *Stembridge*, 6 C. B. (N. S.) 894.

*Exceptions sustained.*