CHARLES W. ROBERTSON vs. BOSTON AND ALBANY
RAILROAD COMPANY.

Hampden.    September 28, 1893. — November 29, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Personal Injuries — Railroad — Negligence — Due Care.*

In an action by a locomotive engineer employed by a railroad corporation, for personal injuries occasioned by the alleged negligence of the servants of another railroad corporation, there was evidence that the plaintiff was, with the locomotive engine in his charge, lawfully in the defendant's yard; and that, by the negligence of the defendant's servants in giving a wrong signal, his engine went off the track at an open switch. Three attempts were then made to get the engine on the tracks again by attaching an engine of the defendant to the plaintiff's engine and letting on steam. The coupling of the two engines was done by the defendant's servants. In the first attempt, the plaintiff endeavored to assist by pulling the throttle of his engine and letting on steam. His engine was damaged by going off the tracks, the cover on the cylinder head being cracked, and the cylinder rod bent. The plaintiff discovered this condition of things before the first attempt to get his engine on the tracks failed. After this, and before the second attempt was made, the plaintiff got off his engine to fix the cylinder rod, and was off when the second attempt was made, and had just got back to the engine when the third attempt was made. When the first attempt was made the engines were coupled together with a link ; at the second attempt they were coupled by a rope, which broke ; and at the third attempt they were coupled by a rope having a link on one end and a hook on the other. The link was fastened in the mouth of the drawbar of the plaintiff's engine, and the hook, instead of being put into the mouth of the drawbar of the other engine, was placed on top of the drawbar, and was kept in place by the coupling pin. In the third attempt the pin broke, the rope flew back, and the hook struck the plaintiff on the head, and he received the injuries complained of. There was also evidence that this mode of fastening the pin was improper. *Held,* that the case should have been submitted to the jury.

LATHROP, J.    This is an action of tort, brought by a locomotive engineer employed by the Connecticut River Railroad Company, for personal injuries received by him through the alleged negligence of the servants of the defendant.    At the close of the evidence for the plaintiff, the presiding judge directed a verdict for the defendant, and reported the case for the determination of this court.

The declaration contains counts at common law, and also counts under the St. of 1887, c. 270.    The plaintiff's argument

was confined to the common law counts; and as we are of opinion that he was entitled to go to the jury on these counts, we need not consider the others.

There was evidence that the plaintiff was, with the locomotive engine in his charge, lawfully in the yard of the defendant; and that, by the negligence of the servants of the defendant in giving a wrong signal, his engine went off the tracks at an open switch. The plaintiff was not injured by this accident. Three attempts were then made to get the engine on the tracks again, by attaching an engine of the defendant to the plaintiff's engine, and letting on steam. The coupling of the two engines together was done by the servants of the defendant. In the first attempt the plaintiff endeavored to assist by pulling the throttle of his engine and letting on steam. His engine was damaged by going off the tracks, the cover on the cylinder head being cracked, and the cylinder rod bent. The plaintiff discovered this condition of things before the first attempt to get his engine on the tracks failed. After this, and before the second attempt was made, the plaintiff got off his engine to fix the cylinder rod, and was off when the second attempt was made, and had just got back to the engine when the third attempt was made. When the first attempt was made the engines were coupled together with a link; at the second attempt they were coupled by a rope which broke; and at the third attempt they were coupled by a rope having a link on one end and a hook on the other. The link was fastened in the mouth of the drawbar of the plaintiff's engine, and the hook, instead of being put into the mouth of the drawbar of the other engine, was placed on top of the drawbar, and was kept in place by the coupling pin. In the third attempt the pin broke, the rope flew back, and the hook struck the plaintiff on the head and injured him severely. There was also evidence that this mode of fastening the pin was an improper mode, and the jury might have found that the servants of the defendant were negligent. The defence rests upon other grounds.

The defendant contends that, by the force of certain agreements made by the officials of the two railroad companies, the Connecticut River Railroad Company was bound, in case of a wreck, to return the locomotive engine to the tracks, although the expense of so doing was to be borne by the Boston and Al-

bany Railroad Company; and that it was the duty of the plaintiff to assist in clearing the wreck. This agreement, made in 1884, after providing that delivery of freight should be considered as made when the engine of one company should be attached to cars in the yard of the other, reads as follows: " In case of wreck or damage to the cars attached to an engine of the Connecticut River Railroad, that company is to take care of such wreck and bear the loss for damage." In 1885 there was added to the agreement the following: " It is further agreed that, in transferring cars under the above agreement, any loss or damage on the tracks of the Boston and Albany Railroad Company caused by the neglect of employees of said company shall be borne by said Boston and Albany Railroad Company."

It is not, however, clear that the legal construction of the agreement between the two railroad companies is as the defendant contends; and we should be slow to adopt this construction, if it appears that the parties have put a different construction upon the agreement. There was evidence that the understanding of the parties was, that when a wreck took place in the yard of the Boston and Albany Railroad Company that company took charge of it, and that when it took place in the yard of the Connecticut River Railroad Company that company took charge of it; and that this understanding had been carried out in several instances where wrecks had taken place.

It is to be noticed, also, that the agreement in question was one to which the plaintiff was not a party, and there is no evidence that he had knowledge of it, if such knowledge would be material. Where an employee of one railroad company is injured while on the premises of another railroad company, through the negligence of the employees of the latter, it has been held that it is enough for the plaintiff to show that he was lawfully there, and that he is not bound by the terms of the agreement between the two companies. *Sawyer* v. *Rutland & Burlington Railroad*, 27 Vt. 370. *Zeigler* v. *Danbury & Norwalk Railroad*, 52 Conn. 543. *Philadelphia, Wilmington, & Baltimore Railroad* v. *State*, 58 Md. 372. *Phillips* v. *Chicago, Milwaukee, & St. Paul Railway*, 64 Wis. 475.

Whatever construction be put upon the contract, it cannot be said, as matter of law, that the servants of the defendant sub-

mitted themselves to the control or direction of the Connecticut River Railroad Company. So far as the evidence goes, it shows that, during all their efforts to get the engine on the tracks, they acted under the direction of the defendant's officers, and that no officer of the Connecticut River Railroad Company assumed to direct or control them.

It is further contended, that, if the plaintiff was not bound to assist in restoring the locomotive engine to the tracks, he did assist, and was either a fellow servant of the servants of the defendant or a volunteer, and therefore the defendant is not responsible. If the accident had happened while the plaintiff was assisting, a question of some nicety would be presented. But it is a sufficient answer to the defendant's contention to say that at the time of the accident there was evidence that he was not assisting the servants of the defendant, and the assistance which he had rendered in no way contributed to the injury. *Hickey* v. *Merchants & Miners' Transportation Co.* 152 Mass. 39.

The defendant also contends that, if it was the duty of the defendant to clear the wreck, the plaintiff should have left his engine and have sought a place of safety. We are of opinion, however, that it could not have been ruled, as matter of law, that the plaintiff was bound to abandon his engine, or was not in the exercise of due care in being upon it at the time the third attempt was made to pull the engine upon the tracks. His engine had not only gone off the tracks, but was damaged. He left it for the purpose of repairing it; and, after repairing it, had just returned to it when the accident happened. Whether he was in the exercise of due care in being where he was, was a question for the jury, as was also the question whether he should at that time have assisted in getting his engine on the tracks by giving his engine steam.

According to the terms of the report, the verdict must be set aside, and the case stand for trial.

*So ordered.*

*J. B. Carroll,* for the plaintiff.
*W. H. Brooks,* for the defendant.