HENRY H. ZEIGLER *vs.* THE DANBURY & NORWALK RAILROAD COMPANY.

The D & N and the S railroads connected, forming a continuous line. By an arrangement between the two companies a train owned and run by the S company went over both roads to a certain point and back daily, the D & N company paying the S company monthly an agreed price for the service upon its road. The train when on the road of the D & N company was under its general control and governed by its rules, and it had entire control of the hands upon it, but the S company was at liberty to use what engine and employ what hands it pleased. The plaintiff was a brakeman on this train and was injured by a collision with a train of the D & N company on its own road, caused by the negligence of the conductor of that train. Held that the plaintiff was not an employee of the D & N company, and that the conductor of the other train was therefore not his fellow-servant.

But the D & N company would have been liable to the plaintiff as its employee if it had been negligent in the employment of a suitable conductor on the train in question, or in having a reasonably safe system for directing its trains.

Whether upon the facts (reviewed at length) the D & N company was to be regarded as guilty of negligence; *Quære.*

The complaint alleged that the plaintiff was employed by the S company as a brakeman and as such employee was lawfully riding on a train of the S company on the road of the D & N company, and while so riding was injured, &c. Held not to be a fatal variance as misstating the plaintiff's position and his reason for being on the train and on the defendants' road.

[Argued March 6th—decided September 5th, 1885.]

ACTION for damages for an injury by reason of the negligence of the defendants in running a train of cars upon their road; brought to the Superior Court in Litchfield County, and tried to the court before *Andrews, J.*

The complaint stated the plaintiff's cause of action as follows:—

That on the 19th day of February, 1883, the plaintiff was an employee of the Shepaug Railroad Company of said state, and was a brakeman in his business for said Shepaug Railroad, and as such employee was riding on a train of said Shepaug Railroad Company between Danbury and Bethel in said county of Fairfield, over and on the track of the railroad of the defendants, as he lawfully had a right to do under said Shepaug Railroad Company as its employee and servant; that while so lawfully riding on said train as aforesaid, and without any fault or negligence of the plaintiff, the defendants by their servants and agents negligently and unlawfully ran an engine with a train of cars into and upon the engine attached to said Shepaug Railroad train, upon which the plaintiff was as aforesaid, and thereby demolished and destroyed said Shepaug Railroad engine, tender and cars thereto attached, and violently threw the plaintiff out and from said Shepaug train, engine and tender; by means whereof the plaintiff was scalded and burned upon his left arm and leg so that the flesh thereof cleaved from his bones, and was injured in his abdomen and spine, so that his life was despaired of, and the plaintiff was made and is now, and will be permanently, disabled and diseased, and has become and ever since has been unable to support himself and his family, and will ever so continue.

The defense was that the injury was caused by the negligence of the conductor of the other train, and that the plaintiff and the conductor were fellow-servants under the defendants.

The court made the following finding of facts:—

The main line of the defendants' railroad extends from Danbury to South Norwalk. It has a branch track from Bethel to Hawleyville. The Shepaug railroad extends

from Hawleyville to Litchfield. During the winter of 1882–3 the defendants had a train called the "Litchfield freight," which, by the time tables then in force, started from Danbury every morning at 7.30 A. M., reached Bethel at 7.40 A. M., left Bethel at 7.45 A. M., and reached Hawleyville at 8.10 A. M. At Hawleyville this train was incorporated with a train on the Shepaug road and continued on to Litchfield. In the afternoon this train returned from Litchfield to Hawleyville and from there, by way of Bethel, to Danbury. The defendants during the same winter had another train called the "night freight," which regularly reached Bethel from South Norwalk at 1.30 A. M., and arrived at Danbury at 1.45 A. M.

For several years prior to this time an agreement had existed between the Shepaug Company and the defendants, and which was then in force, by virtue of which the Shepaug Company furnished to the defendants an engine, engineer, fireman, conductor and brakeman to run the "Litchfield freight" train from Danbury to Hawleyville and back each day, for an agreed price, payable monthly. The train while on the defendants' road was a train of the defendants, run by their time tables and according to their orders. Between Hawleyville and Litchfield it was a train of the Shepaug Company, run by its time tables and according to its order. The same engine drew it and the same men had it in charge all the way from Danbury to Litchfield and back. Each company had exclusive control over the train while on its own road; and neither company had any control whatever over it while it was on the road of the other.

The plaintiff engaged to the Shepaug Company as a brakeman some time in the latter part of the summer of 1882, and was by that company assigned to duty as one of the brakemen to assist in running the "Litchfield freight" of the defendants. The plaintiff assented to such assignment and had been continuously so employed up to the time he received the injury of which he complains. He received his wages from the Shepaug Company.

On the morning of February 20th, 1883, this "Litchfield

'freight" train started from Danbury at its regular time. There were no cars that morning from Danbury to Bethel, and the brakemen, including the plaintiff, were riding on the tender to the engine. When about three fourths of a mile out of Danbury the train came into collision with the "night freight" then approaching Danbury almost six hours behind its regular time. This collision was occasioned solely by reason of the negligence of the conductor in charge of the night freight train. The plaintiff was terribly burned, one of his hip bones was fractured, and he received other severe and, in all probability, permanent injuries.

The contract between the Shepaug Company and the defendants was such that the men furnished by that company to the defendants, while on any part of the road of the latter, were directly under the orders of the defendants' officers "the same as if employed and paid by them," and were accountable to the defendants' officers for the proper performance of their duties; and so fully was this so, that the defendants' officers had the right to discharge any of them for neglect or any improper conduct while on that road.

Upon these facts the court rendered judgment for the defendants. The plaintiff appealed.

*H. B. Graves*, for the appellant.

1. The plaintiff was not in the employ of the defendants in any such manner as to make him a fellow-servant with the conductor whose negligence caused the collision. The contract under which he was employed was solely with the Shepaug Railroad Company. So far as the Shepaug Company's trains were run upon the track of the defendants it was wholly under a contract between the two companies; and compensation for the service was paid to the Shepaug Company and not to the plaintiff. The plaintiff knew nothing about that contract and was not supposed to. He worked solely for the Shepaug Company and looked solely to that company for his pay.

2. If the plaintiff could be regarded as in the employ of the defendants, still he was not in any proper sense a fellow-

servant with the conductor. A railroad conductor is the immediate representative of the corporation and his acts are imputable to it. *Chicago, Milwaukee & St. Paul R. R. Co.* v. *Ross*, 112 U. S. Reps., 377; *Cleveland, Columbus & Cincinnati R. R. Co.* v. *Keary*, 3 Ohio St., 201; *Louisville & Nashville R. R. Co.* v. *Collins*, 2 Duv., 114; *Little Miami R. R. Co.* v. *Stevens*, 20 Ohio, 415; *Mad River & Lake Erie R. R. Co.* v. *Barber*, 5 Ohio St., 541; *Pittsburgh, Fort Wayne & Chicago R. R. Co.* v. *Devinney*, 17 id., 197; *Berea Stone Co.* v. *Kraft*, 31 id., 292; *Lake Shore & Michigan Southern R. R. Co.* v. *Lavalley*, 36 id., 221; *Wilson* v. *Willimantic Linen Co.*, 50 Conn., 433; Wood on Master & Servant, 878, and note.

3. Even if the plaintiff and the conductor are to be regarded as fellow-servants, yet the defendants are liable for neglect of duty in employing so unfit a man as conductor. The recklessness exhibited by the conductor, as found by the court, shows him to have been an utterly unfit person for so important a place. The defendants had no right to put their servants to the risk involved in having such a conductor.

4. The variance claimed by the defendants' counsel between the allegations of the complaint and the facts as proved and found, is unimportant and will not be regarded by the court. It is never necessary that wrongful acts should be stated with entire accuracy, so long as the court can see that the evidence proves substantially what is alleged. And especially is this so under our Practice Act, which was intended to do away with all niceties of pleading.

*J. H. Perry*, for the appellees.

1. The proofs and the facts found upon them, vary materially from the allegations of the complaint. *Shepard* v. *New Haven & Northampton Co.*, 45 Conn., 54; *Batterson* v. *Chicago & Grand Trunk Railway Co.*, 49 Mich., 184.

2. The plaintiff was a fellow servant with the employees of the defendants. The arrangement under which the plaintiff was acting by his own consent at the time of the acci-

dent is fully set forth in the record. There were two masters, to each of whom he in turn became accountable. Although he received his wages from the hands of the Shepaug Company, this was evidently only because such was the easiest way for the two companies to pay the hands of that particular train, who were alternately the servants of each. The train on which he was when injured "was a train of the defendants," and the men on it "were directly under the orders of the defendants' officers, *the same as if employed and paid by them*, and were accountable to the defendants' officers for the proper performance of their duties, and so fully was this so that the defendants' officers had the right to discharge any of them for neglect or any improper conduct while on that road." That the plaintiff was a servant of the defendants at the time of the injury is upon these facts beyond question. In *Burke* v. *Norwich & Worcester R. R. Co.*, 34 Conn., 474, it became a question whether the plaintiff, who was hired by one O'Neill, a contractor, to shovel coal upon the defendants' cars, was a servant of the defendants. The following statement of the law by the court below is approved by the Court of Errors:— "Had the company the control of him? Could they discharge him without breaking their special contract with O'Neill? If they could, or O'Neill was their agent in employing him, then he was in their employ and the plaintiff cannot recover." In *Corbin* v. *The American Mills*, 27 Conn., 274, the court says that "the existence of actual present control and supervision on the part of the employer" is a circumstance "of much weight" in determining whether one person is a servant of another, and that one person is the servant of another when "he is acting at the time for and in the place of" that other "in accordance with and representing the other's will and not his own." See also *Illinois Central R. R. Co.* v. *Cox*, 21 Ill., 20; *Wood* v. *Cobb*, 13 Allen, 58; *Kimball* v. *Cushman*, 103 Mass., 194; *Johnson* v. *City of Boston*, 118 id., 114; *Vary* v. *Burlington, Cedar Rapids & Minnesota R. R. Co.*, 42 Iowa, 246; *Chicago, Burlington & Quincy R. R. Co.* v. *Clark*, 2 Bradwell, 596;

*Rourke* v. *White Moss Colliery Co.*, L. Reps., 1 C. P. Div., 556; *Murray* v. *Currie*, L. Reps., 6 C. P., 24. It will be observed that none of the above cases conflict with the principle that a person cannot have two separate masters at the same time. The simple test is who, at the time of the injury, had the right to control his action. "The true test of fellow-service is community in that which is the test of service, which is subjection to control and direction by the same general master in the same common object; but unless they are subjected to the same general control the fact that they are engaged in the same common pursuit does not render them co-servants. It is subjection to the same general control coupled with an engagement in the same common pursuit that affords the test. Wood's Master & Servant, § 435.

3. A conductor upon one train is a fellow-servant with a brakeman upon another train of the same company. *Louisville & Nashville R. R. Co.* v. *Robinson*, 4 Bush, 507; *Hayes* v. *Western Railroad Corp.*, 3 Cush., 270; *Boldt* v. *N. York Central R. R. Co.*, 18 N. York, 432; *Wright* v. *N. York Central R. R. Co.*, 25 id., 562; *Whaalen* v. *Mad River & Lake Erie R. R. Co.*, 8 Ohio St., 249; *Pittsburgh, Fort Wayne & Chicago R. R. Co.* v. *Devinney*, 17 id., 197; *Bull* v. *Mobile & Montgomery R. R. Co.*, 67 Ala., 206; *Hutchinson* v. *York, Newcastle & Berwick Railway Co.*, 5 Exch., 343. The case of *Chicago, Milwaukee & St. Paul R. R. Co.* v. *Ross*, 112 U. S. Reps., 377, recently decided by the Supreme Court of the United States, holds that "the conductor of a railway train who commands its movements, directs when it shall start, at what stations it shall stop, at what speed it shall run, and has the general management of it and control over the persons employed upon it, represents the company," and therefore is not the fellow-servant of a brakeman on the same train. We can but think that conductors with the powers here recited are seldom found on railroad trains. However that may be, Justices BRADLEY, MATTHEWS, GRAY and BLATCHFORD dissented from the judgment of the court and regard it as "breaking down

the long established rule." The opinion admits substantially that the current of authority in England and the United States is the other way, and manifestly is an attempt at judicial legislation. Cases in Ohio and Kentucky only are cited in support of the opinion. Pierce, in his work on Railroads, p. 366, says: "Subordination in service has been treated by some authorities as having the effect to prevent the service being regarded as a common one. * * * Thus the company was held liable to an engineer or brakeman for an injury resulting from the negligence of the conductor who directed the movements of the train. * * * This modification of the general doctrine, *which is peculiar to Ohio*, has found little favor in other states." If the Ross case had been tried in the Minnesota state court, instead of in the United States Circuit Court for that district, the decision would have been different. *Brown* v. *Winona & St. Peter R. R. Co.*, 27 Minn., 162. The consideration of the recent case of *Darrigan* v. *N. York & N. Eng. R. R. Co.*, must have satisfied this court that the decisions in England, New York, Massachusetts, Indiana, Wisconsin, Michigan, and in fact all the principal states except Ohio, are opposed to the doctrine of the case in question. And besides, in the case at bar, the negligent conductor was not the conductor of the plaintiff's train, and so had no authority over him whatever. The facts set forth in the finding clearly come within the rule laid down by courts and writers upon the subject, which is that "a fellow-servant, within the meaning of the general rule, is any one serving the same master in the same common employment and under his control, whether equal, inferior or superior in his grade or standing." *Ross case*, above cited; *Morgan* v. *Vale of Neath Railway Co.*, 5 Best & Smith, 570, 580; Wood's Master & Servant, §§ 435, 448. While the binding force of the general rule was recognized in *Burke* v. *Norwich & Worcester R. R. Co.*, 34 Conn., 479, and *Wilson* v. *Willimantic Linen Co.*, 50 Conn., 457, its limitations and applications seem to have been nowhere else even discussed in our reports.

Zeigler v. Danbury & Norwalk R. R. Co.

CARPENTER, J.—This is an action for damages for injuries received by a collision of two trains on the defendant's road. The case comes up on the plaintiff's appeal from a judgment in favor of the defendant.

The main question discussed is, whether the plaintiff was an employee of the defendant. The defense, however, raises a question of variance, which we will first consider.

The complaint alleges that the "plaintiff was an employee of the Shepaug Railroad Company of said state, and was a brakeman in his business for said Shepaug Railroad, and as such employee was riding on a train of said Shepaug Railroad Company between Danbury and Bethel in said county of Fairfield, over and on the track of the railroad of the defendant, as he lawfully had a right to do under said Shepaug Railroad Company as its employee and servant, and that while so lawfully riding he was injured," etc.

The finding shows that the plaintiff was hired and paid by the Shepaug Railroad Company; that he was on a train run by that company between Litchfield and Danbury, a part of the way over its own road, and a part of the way over the defendant's road; that while it was on the defendant's road the train was subject to its rules and regulations; that the train hands "were directly under the orders of the defendant's officers, the same as if employed by them, and were accountable to the defendant's officers for the proper performance of their duties; and so fully was this so, that the defendant's officers had the right to discharge any of them for neglect or any improper conduct while on that road."

This it is claimed is a fatal variance, as it mis-states the plaintiff's position and his reason for being on the train and on the defendant's road. We think this is altogether too technical. It is tripping the plaintiff up and turning him out of court on a legal technic. It required him to know the legal effect of a contract between his employer and the defendant, a contract of which he knew little or nothing. Whatever may be the legal effect of that contract in other

respects, we think he might properly describe himself as in the employ of the Shepaug Railroad Company, and as being on a train run by it. The time, place, circumstances and manner of the accident are the same. The variance relates to the legal relations which the plaintiff, and the train on which he was, sustained to the two railroad companies. So long as the defendant was not deceived or misled as to any matter of fact, the plaintiff was not required to state those legal relations with technical accuracy.

In the next place it is claimed that there is a variance in respect to the method of the injury. The complaint alleges a collision, by reason whereof he was thrown out and from the train, and was scalded and burned and otherwise injured. The finding is that by the collision he "was terribly burned, one of his hip bones was fractured, and he received other severe and, in all probability, permanent injuries." We discover no variance here. The substance of the allegation is that the plaintiff was injured by the collision, and the proof seems to have fully sustained it.

In respect to the relation of the plaintiff to the defendant, two views may be taken:—*first*, that he was an employee of the defendant, and *second*, that he was an employee of the Shepaug company, and as to the defendant a third person or stranger. We will consider the case in both aspects.

If he was an employee of the defendant, and the accident was caused by the negligence of a fellow-servant, without fault in the defendant, then the rule which prevails in this state would exonerate the defendant from liability. But is it entirely clear from this finding that the defendant was without fault? The "night freight" was a train running from Norwalk to Danbury. It was nearly six hours behind time. The collision occurred on that part of the defendant's road which was between Danbury and Bethel, the only part of the road over which both colliding trains ran. The conductor of the "night freight" left Bethel on a single track road at a time which would make a collision with the "Litchfield freight" inevitable, pro-

vided the latter train left Danbury on time. The finding is that the collision was occasioned solely by the negligence of the conductor in charge of the night freight train. This finding is ambiguous. It may mean, and probably does, that there was no negligence on the part of the plaintiff, or those in charge of the other train. If that is the extent of its meaning then there is no finding as to the negligence of the defendant—an all important fact in the case. For if the defendant was negligent in failing to employ a suitable conductor on the night freight, or in failing to have in operation a reasonably safe system for controlling and directing irregular trains, it is clearly liable to one of its employees. "It is those risks alone which cannot be obviated by the adoption of a reasonable measure of precaution by the master that the servant assumes." *Pantgar* v. *Tilly Foster Mining Co.*, 1 Eastern Reporter, 193, N. Y. Ct. of Appeals, June 9th, 1855. And this is so even in Massachusetts, where the rule is adhered to more rigidly perhaps than elsewhere. *Magee* v. *Boston Cordage Co.*, 1 Eastern Reporter, 126, decided in June, 1885.

Is it not entirely consistent with this finding that the defendant was in fault? Yea, more ; does it not appear affirmatively,—not expressly, but as a necessary conclusion from the facts stated,—that it was so ? Let us carefully examine the finding with a view to an answer to this question.

A freight train was due at Danbury at 1.45 A. M. At 7.30 A. M. it was on a single track road between Bethel and Danbury, approaching Danbury; and the Litchfield freight left Danbury on its regular time, 7.30 A. M., going in the opposite direction, so that the trains must come together. Was the conductor of the Litchfield train notified to hold his train at Danbury until the arrival of the night freight ? Evidently not. · Is a system which requires no notice under such circumstances a reasonable one ? Was the conductor permitted to run his train (not on time) at his own pleasure, without reference to other trains, and without directions from some intelligent and authoritative source ? Was there

no system by which trains behind time and irregular trains were regulated and controlled by a train dispatcher or some superintending officer? If so, is such management consistent with the exercise of reasonable care and prudence? Was there a regular train dispatcher whose orders were disregarded by the conductor? If so, was the company free from fault in having such a conductor in its employ? These questions are pertinent and important. In respect to all these matters the record is silent. The facts stated clearly indicate a want of due care in the defendant, and a jury would be warranted in so finding. More than that; they establish a *primâ facie* case. They require explanation, and it is incumbent on the defendant to explain them, as all the facts are peculiarly within its knowledge. It failed to do so, and such failure is significant.

The only answer that we can conceive of is to construe the finding as negativing any negligence in the company. If the judge had intended so to find it is a little surprising that he did not say so, instead of leaving the finding ambiguous. Besides, there is a strong suspicion that the case was not tried upon any such theory, and that such a construction will be very unjust to the plaintiff. If these matters were not investigated justice clearly requires that a new trial should be had in order that they may be, unless the plaintiff is entitled to a judgment on the other ground. However, as what we have said on this part of the case is merely suggestive, and as we do not intend to decide the case on this point, we shall practically give the defendant the benefit of that construction so far as our present purpose is concerned, and pass to a consideration of the question whose servant was the plaintiff?

He was employed and paid by the Shepaug Railroad Company. A considerable portion of each day he was on that company's road and exclusively in its employ. While there he was responsible solely to its officers, the defendant having no control over him whatever. There was an arrangement between the two companies, " by virtue of which the Shepaug company furnished to the defendant an engine,

engineer, firemen, conductor and brakemen, to run the Litchfield freight train from Danbury to Hawleyville and back each day for an agreed price payable monthly." So that the engine and train-hands were those of the Shepaug Railroad Company furnished to the defendant; that is, to do its work in its stead, and for which was paid a fixed price monthly, not to the men but to the Shepaug company.

The contract is not before us, but from what appears it did not relate to any particular engine and train-men, but simply to an engine and train-men, so that the Shepaug company was at liberty to change engines and men at its pleasure, and presumptively did so during the many years that the arrangement continued. It follows that the Shepaug company did not lose the entire control of the men while on the defendant's road, but had a general supervision over them, subject of course to the rules and regulations of the defendant and to such special orders as its officers might give, and might discharge them for any cause it might deem sufficient, although the defendant might consider it otherwise.

On the other hand the plaintiff sustained no contract relation whatever with the defendant. For that reason there is no room for any presumption that he stipulated with the defendant to assume any risk arising from the negligence of its employees. No such stipulation can be presumed from the contract between the defendant and the Shepaug company, because the plaintiff was not a party to that contract, did not know its terms, and the contracting parties had no power to make such a stipulation for him. For similar reasons no such presumption can arise from the control which the defendant reserved to itself over the train while on its road. That evidently was intended to avoid the inconvenience and peril that would result from having different trains on its road operated by different rules. It was reasonable that the defendant should retain the absolute control over all trains on its road; its own safety required it. To that end the power to discharge the train-men on the Litchfield train for neglect or improper

conduct was essential. But this power must be construed with reference to the subject matter and the end which the contracting parties manifestly had in view. If the defendant could discharge them so far as to prohibit their services on its road, it would accomplish all it desired to, and all that the parties contemplated, and hence all that it had a right to require. To interpret this arrangement as giving the power to discharge them absolutely from the employ of the Shepaug company, would be going far beyond the obvious scope and purpose of the contract.

The defendant's authority therefore over the plaintiff was a limited one. The contract may be fulfilled and its object accomplished without regarding the plaintiff as the defendant's servant. The plaintiff cannot be so regarded without involving this consequence, which is well nigh an absurdity, that the plaintiff's employer changed every time he passed from one road to the other, which was usually twice each day. It is by far the better view to consider the Shepaug company as doing certain work for the defendant, but doing it by means of its own instrumentalities and servants, and not by means of the instrumentalities and servants of the defendant.

The defense of common employment has little of reason or principle to support it, and the tendency in nearly all jurisdictions is to limit rather than enlarge its range. It must be conceded that it cannot rest on reasons drawn from considerations of justice or of public policy. So far as the rule is to be retained it must have its foundation in the contract theory. A writer in the American Law Register for July, 1885, after a review of the law, and noticing the drift of modern decisions, says :—" If the law is to remain unchanged, let it be upon the ground that the servant assumes the risks incident to his employment, a conclusion which, though it may sometimes bear hard, is reasonable enough. Never was it more important than it is now, when the tendency in every department of thought is to pass authority by, and search into the causes of things, that the law should

commend itself to the plain sense of men in its reasonings as well as its rules."

No consideration of public policy will sustain this defense, because the public are not at all interested in the question as they are in questions concerning inn-keepers and common carriers. They are only interested to have the law justly and fairly administered. No considerations of justice will sustain it, because the plaintiff had no relation whatever to the negligent conductor. It was not his duty to observe his conduct, he had no opportunity to do so, and no opportunity to guard against the consequences of his negligence. We have shown that the defense can have no foundation in any contract to which the plaintiff was a party or which can justly affect him. If·therefore the plaintiff may in any sense be regarded as in the service of the defendant, he is clearly without the reason of the rule and therefore not within the rule itself. But he cannot in any proper sense be regarded as the servant of the defendant. The Superior Court erred in holding that he was and that the defendant was exempt from liability.

The judgment is reversed and a new trial ordered.

In this opinion the other judges concurred; except GRANGER and SANFORD, Js., who dissented.