## HUGHSON

### *v.*

## THE RICHMOND AND DANVILLE RAILROAD COMPANY.

Master and Servant; Liability of Master for Servant's In-
juries; Fellow-Servants; Negligence;
Release; Evidence.

1. The real ground of the exemption of a master from liability to his
servant for injuries received in the course of the employment
by the negligence of fellow-servants, is based upon the implied
contract between the master and servant that, in consideration
of the employment and payment of wages, the servant assumes
the risk of injury while in such employment.   Therefore, when
the porter of a Pullman car, which forms a part of a train of a
railroad company, and is run as a part of such train under a
contract between the railroad company and the Pullman Com-
pany, is injured through the negligence of a switchman of the
railroad company, there being no such employment, the railroad
company is not exempt from liability for such injury.

2. But an employé of the Pullman Company, who is given free trans-
portation by a railroad company, by the terms of an existing
contract between the two companies, is not a passenger of the
railroad company on whose line he runs, in any such sense as
to require of the railroad company the highest degree of skill
and care in the operation of its road; and if injured, negligence
will not be presumed *prima-facie*, as in the case of a passenger,
from the simple fact of the occurrence of the accident and in-
fliction of injury, but the *onus* is upon him to show affirmatively
that the injury was caused by the lack of ordinary, reasonable
care by the railroad company or its servants.

3. A written contract of employment between master and servant, con-
taining a release by the servant to his master from any and all
claims for liability on account of personal injuries, death or
otherwise, during such employment, and having no retrospec-
tive operation, is not admissible in evidence in a suit for dam-
ages by such servant against his master, growing out of an in-
jury received while in the employment of the same master more
than a year before such written contract was executed.

No. 108.   Submitted October 16, 1893.—Decided January 2, 1894.

HEARING on a motion by the plaintiff for a new trial on
bill of exceptions, in an action for damages for personal
injuries. *Reversed.*

The COURT in its opinion stated the case as follows:

This was an action brought by the appellant, John L. Hughson, the plaintiff below, against the appellees, the Richmond & Danville Railroad Company and the Virginia Midland Railroad Company, doing business in this District, to recover for an alleged injury received on the road of the latter. The accident producing the injury to the plaintiff occurred on the 18th of May, 1887, to a train while running between Lynchburg and Charlottesville, in the State of Virginia. The train was made up of ordinary passenger cars, and one or more Pullman parlor and sleeping cars; and the accident occurred, as contended by the plaintiff, either from a defective switch lock or apparatus used on the tracks of the defendants, or from want of due and proper care in the operation and management of such switching apparatus, by the employees of the defendants. The plaintiff was, at the time of the accident, employed as servant in a Pullman sleeping car in the train, and that car was derailed and thrown over upon its side, and the plaintiff, being inside the car, was thereby injured.

The principal question on this appeal is, in whose service or employ was the plaintiff at the time of the occurrence of the accident? The defense below was, that if the accident was the result of negligence at all, it was the negligence of the employees of the defendants, and that the plaintiff was in the relation of fellow-servant to such employees, and therefore he had no ground of action against the defendants, the common master, for the injury suffered.

With reference to that view of the case, and in support of the principle relied on by the defense, the trial court, with other instructions given, instructed the jury that if they found from the evidence that the Pullman car, in which the plaintiff was employed at the time, was derailed by the misplacement of a switch, and that such misplacement of the switch was wholly due to the negligence of some employee of the defendants charged with the duty of properly closing the same, such neglect of duty on the part of said employee

was one of the risks taken by the plaintiff when he assumed the duties of his employment, and the defendants were not responsible to him for any damage sustained by reason of the accident so caused. Whether this instruction was proper, depends upon the question whether the plaintiff at the time was a fellow-servant with the switchman of the railroad company.

It appears from the record that the Pullman Car Company was, at the time of the accident, engaged under contract in furnishing, equipping, manning and running parlor and sleeping cars in connection with, and as part of the passenger trains of the defendants, and that the plaintiff, as one of the employees of the Pullman Car Company, was employed and performing the duties of porter and buffet man on one of the Pullman cars, and that his duties were to attend to the wants and requirements of the passengers occupying seats and berths in the Pullman cars, but not elsewhere. The Pullman Car Company employed its own agents and servants, and they were under its exclusive direction and control, and such agents and servants had no other connection with the railroad companies than simply to be transported over the lines of the road, while in the performance of their duties in the Pullman cars. They were neither employed, controlled or paid by the railroad companies. By the agreement between the Richmond & Danville Railroad Company, one of the defendants, and the Pullman Palace Car Company, dated the 25th of January, 1878, and in force at the time of the accident, special provisions were made with respect to the agents and servants of the latter company. After stipulating to furnish the necessary sleeping cars by the Pullman Company to be run in connection with and as part of the trains of the railroad company, the agreement contains the following clauses:

"2. The Pullman Company hereby agrees, at its own cost and expense, to furnish one or more employees, as may be needful, upon each of said cars, whose duty shall be to collect fares for the accommodations furnished in said cars, and

generally to wait upon passengers therein, and provide for their comfort.

"3. The railway company hereby agrees that the general officers of the Pullman Company, and the employees named in Article 2 of this agreement, shall be entitled to *free passage* over the lines of the railway company when they are on duty for the Pullman Company.

"4. The Pullman Company hereby agrees that the general officers of the railway company shall be entitled to free passes in any of the cars furnished by the Pullman Company under this·contract.

"5. It is hereby mutually agreed that the said employees of the Pullman Company, named in Article 2 of this contract, shall be governed by and subject to the rules and regulations of the railway company, which are, or may be, adopted from time to time, for the government of its own employees; and in the event of any liability arising against the railway company for personal injury, death or otherwise, of any employee of the Pullman Company, it is hereby distinctly understood and agreed that the railway company shall be liable only to the same extent it would be if the person injured was an employee in fact o'f the railway company, and that for all liability in excess thereof it shall be indemnified and paid by the Pullman Company."

*Messrs. Riddle & Davis* for the plaintiff in error.

1. The plaintiff in error was not a party to the contract between the defendants in error, and is, therefore, in no way bound by it. *R. R. Co.* v. *State of Md., use of Bitzer,* 58 Md., 372; *Snow* v. *R. R. Co.,* 8 Allen, 441.

2. The plaintiff in error and the switchman were not co-servants. For rule as to who are co-servants see *Farwell's Case,* 4 Metc., 49; *Wonder's Case,* 32 Md., 411. Servants of different masters are not co-servants, although for the time engaged in the same business. *Svenson* v. *Steamship Co.,* 57 N. Y., 108; Shearman & Redf. on Neg., 116; *Smith* v. *R. R. Co.,* 19 N. Y., 127 ; *R. R. Co.* v. *State of Md., use of*

*Bitzer*, 58 Md., 372; *Snow* v. *R. R. Co.*, 8 Allen, 441; *Zeigler* v. *R. R. Co.*, 52 Conn., 543; *Catawissa Co.* v. *Armstrong*, 49 Pa. St., 186; *Sawyer* v. *R. R. Co.*, 27 Vt., 370; *Phillips* v. *R. R. Co.*, 64 Wis., 475; *Clark* v. *R. R. Co.*, 92 Ill., 43; *Sullivan* v. *Tioga Co.*, 112 N. Y. 643; *Stetler* v. *R. R. Co.*, 46 Wis., 497; *Gilroy* v. *R. R. Co.*, 4 Cush., 400; Redf. on Rwys., 303.

*Mr. Hugh L. Bond, jr.*, and *Mr. Edward Duffy* for the defendants in error.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The agreement between the defendants, mentioned in the statement of the case, while not binding upon the plaintiff, he not being a party thereto, shows plainly the relation that the agents and servants of the Pullman Company bore to the railway company. The agreement is based upon the assumption that the agents and employees of the respective companies were not serving the same common master, nor engaged in the same common employment; but that the agents and servants of the Pullman Company were engaged in a separate and distinct employment, receiving their compensation from, and remaining subject to the exclusive control and direction of,' a separate and independent master, from the railroad company, and hence the provisions for transporting them free of charge, while in the performance of duty for the Pullman Company. There was no contract whatever existing between the plaintiff and the railroad company, nor service to be rendered by the former to the latter; and therefore there could be no implied contract that, in consideration of employment and the payment of wages, the plaintiff would assume the risk of injury that might result from the negligence of the employees of the railroad company. No such employment existed. And such implied contract, according to the later decisions, is the real ground of the exemption of the master from liability to his servant for injuries received in the course of the employment by the negligence of a fellow-servant. And such being the case, clearly the principle of exemption from liability does not

apply in this case. *Smith* v. *Steele*, L. Rep., 10 Q. B., 125; *Hough* v. *Rwy. Co.*, 100 U. S., 213, 215. The principle is fully illustrated by decisions made in cases of close analogy to the present, as may be seen by reference to the cases of *Smith* v. *The N. Y. & H. R. Rwy. Co.*, 19 N. Y., 127 ; *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441 ; *Zeigler* v. *D. & N. R. R. Co.*, 52 Conn., 543 ; *Catawissa Co.* v. *Armstrong*, 49 Penn. St., 186; *Phil., W. & Balt. R. R. Co.* v. *State, use of Bitzer*, 58 Md., 372 ; *Stetler* v. *Chicago & N. W. R. R. Co.*, 46 Wis., 497. And for a statement of the general principle applicable to such cases, see Shearm. & Redf. on Neg., p. 130, Sec. 101.

But though the plaintiff was not a servant of the railroad company, and therefore not a co-servant with the employees of that company, and consequently not subject to the principle of non-liability of the master for the negligence of his servant producing an injury to a fellow-servant, yet the plaintiff was not a passenger in any such sense as to require of the railroad company the highest degree of skill and care in the construction and maintenance of its roadway and machinery, and the operation of its road and the running of its trains, such as are required in the case of a passenger. Nor will the principle apply in such case as this, which applies in the case of a passenger, that negligence is presumed *prima facie*, from the simple fact of the occurrence of the accident and the infliction of injury, imposing the *onus* upon the defendant of showing the absence of negligence. *Stokes* v. *Saltonstall*, 13 Pet. 181. But in a case of the nature of the present, the *onus* of proof is upon the plaintiff to show affirmatively that the injury he suffered was occasioned by the want of the exercise of ordinary, reasonable care by the defendant or its servants. The plaintiff must, at least, be supposed to understand the nature and risks of the employment, and that he assumed the risks of ordinary accidents in the course of the employment; and the condition of his right to recover of the railroad company, for an injury received in an accident, is, that he can show affirmatively that the injury was caused by the want of ordinary care and diligence on the part of the railroad company or its employees.

It follows, that the court below was in error in instructing the jury as it did, as to the exemption of the defendants from liability; but it does not follow that the plaintiff has a right to recover. That depends upon the proof of negligence in fact, and that the plaintiff was injured thereby.

There is another error assigned, for which the judgment below is required to be reversed, and that is the admission in evidence of the agreement or release* of the plaintiff to the

---

*Agreement between J. L. Hughson and Pullman Company : Pullman's Palace Car Company, Washington Station, District of Columbia, United States of America, July 12th, 1888.—Be it known that I, J. L. Hughson, hereby accept employment by, and enter into the service of, Pullman's Palace Car Company, hereinafter called the Pullman Company, as a Pullman car porter upon the express conditions following :

First.—That I may be suspended definitely or indefinitely with or without pay, or be discharged, from such employment and service, at the pleasure of the Pullman Company, or at the pleasure of any general, division or assistant superintendent, or authorized agent thereof, at any time, and at any place, without previous notice, such notice being hereby expressly waived ; my pay to cease with my employment :

Second.—That, in consideration of such employment and service, and the payment to me of the wages or salary now or hereafter agreed upon, and as a part of the agreement for such employment and service and the payment to me of such wages or salary, I hereby undertake and bind myself to assume all risks of accidents or casualties by railway travel or otherwise, incident to such employment and service, and accordingly hereby forever release, acquit and discharge the Pullman Company from any and all claims for liability, of every nature and character whatever, to me or to my heirs, executors, administrators or legal representatives, on account of personal injuries, death or otherwise, while in such employment and service :

Third.—That I also hereby undertake and bind myself to obey the rules and regulations of the railway companies over whose lines of railway the sleeping, drawing-room and parlor cars of the Pullman Company may run, the same as if I were an employé in fact of such railway companies ; and in further consideration of such employment and service, and of the payment to me of such wages or salary therefor, by the Pullman Company, and of my transportation free of charge by such railway companies over their lines of railway, where any accident or casualty may occur, if at all, I hereby forever release, acquit and discharge such railway companies from all claims for liability of every nature and character whatever, to me or my heirs, executors, administrators or legal representatives, on account of personal injuries, death or otherwise, while in such employment and service, and on account of which personal injuries, death or otherwise, the Pullman Company may be liable to indemnify such railway companies :

Fourth.—That it is hereby distinctly understood by me, that this agreement is binding upon me, while in such employment and service, whether in the United States of America or the Dominion of Canada or the Republic of Mexico.    (Signed)    J. L. Hughson. [Seal.]

Pullman Car Company, dated the 12th of July, 1888. That release was executed after the alleged injury received by the plaintiff, and it has no retrospective operation. It may have had a prejudicial effect on the mind of the jury. We can perceive no legitimate object for which it was admissible in evidence.

There are other errors assigned upon exceptions taken at the trial; but they would seem to become immaterial, in view of the determination by this court of the main or leading proposition of the case. The judgment is reversed and a new trial ordered.

*Judgment reversed and new trial awarded.*