WILLIAM BRENNAN vs. THE BERLIN IRON BRIDGE COMPANY.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

On appeal from a judgment rendered on a hearing in damages after default, the facts stated in the complaint are to be taken as true, unless they are found to be untrue by the trial court or their truth is inconsistent with the special facts found.

In an action by an employee against his employer for injuries claimed to have been caused by negligence imputable to the defendant, the trial court, upon a hearing in damages after a default, found that the defendant had not proved that the plaintiff's injuries were caused by the negligence of a fellow-servant. *Held* that this finding was conclusive as to that defense, unless the facts found showed, as matter of law, first, that the negligence did not occur in connection with the discharge of a duty which the law imposed upon the master, and second, that the person by whose negligence the injury was caused was the fellow-servant of the plaintiff.

The character of the duty in regard to which a servant of the master is negligent is the true test to determine whether his negligence was that of a vice-principal, or of a fellow-servant of the plaintiff.

The court found that the injury complained of was caused by the fall of one of a pile of bridge-timbers near which the plaintiff was working, that said timbers were piled to await use on a trestle which the defendant was building, that one *B*, an experienced bridge-

builder, was sent by the defendant as its representative and super-intendent and given full charge of the job and men, that he in fact superintended the piling of the timbers and assisted in doing the work, and that it was his duty to know and he did know how they were piled. *Held* that it did not appear as matter of law from these facts that the relation of *B* to the defendant was not that of vice-principal, nor that the defendant was not chargeable with know-ledge of the condition of the pile of timber.

The court also found that the plaintiff was in the general employ of an iron company for whom the defendant was building such trestle, that by the direction of the iron company's superintendent he went to assist defendant's employees, that he did not know that they were not in the iron company's employ, nor that he had changed his master, that the iron company did not lose control over him nor the defendant gain such control except by the temporary order of the iron company's superintendent, and that he was paid by the iron company, who charged his time to the defendant. *Held* that it did not appear from these facts as matter of law that the plain-tiff was a fellow-servant of *B*, the defendant's superintendent.

Upon the trial *B* was asked as to whose duty it was to see that the tim-bers were securely piled. *Held* that the question was properly excluded, especially as the court offered to admit testimony as to any instruction, rule, or custom upon the subject.

Argued October 29th, 1901—decided January 9th, 1902.

ACTION to recover damages for personal injuries claimed to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and heard in damages to the court, *Thayer, J.;* facts found and judgment rendered for $3,000, and appeal by the defendant for alleged errors in the rulings and findings of the court. *No error.*

The appellant also filed an application to rectify the find-ing of the trial court.

Certain questions connected with this case have been dis-cussed in cases between the same parties reported in 71 Conn. 479, 72 id. 386 and 73 id. 412.

From the finding of facts at the last hearing upon the sub-stituted complaint, it appeared that prior to November 13th, 1894, the defendant Bridge Company made a contract with the Naugatuck Malleable Iron Company, by the terms of which the defendant was to construct for the Malleable Iron Company a coal trestle to extend from the railroad track to

the annealing room of the Malleable Iron Company, consisting of iron columns upon stone bases, with wooden braces and cross-pieces, and two parallel lines of wooden stringers upon the tops of the columns, said stringers being of different lengths, the shorter from 13 to 17 and the longer from 25 to 29 feet in length, and the longer ones weighing from 1,200 to 1,500 pounds. It was agreed that the Malleable Iron Company should furnish such laborers as the defendant might temporarily require in moving timbers, etc., and that the Malleable Iron Company should be paid by the defendant for the time of such laborers.

The defendant began the construction of the trestle on November 13th, 1894, and sent " as its agent and superintendent, an experienced bridge builder," one Bowen, with a gang of three men. " Bowen had full charge of said job and the men," and authority to employ other help, if required, and himself assisted the men with the work. On the 17th of November the stringers were unloaded from the cars and piled in two piles. Those of the south pile, near which plaintiff was hurt, were piled upon three car stakes laid upon the ground three or four tiers of stringers being laid upon them, the west tier consisting of three stringers, the top one being a long one so placed that " the west faces were plumb," piled indiscriminately as regards length, said west tier with the stakes under it being from 41 to 48 inches high. The ground where the stringers were piled was substantially level. " It did not appear whether there was any rolling or unevenness of the surface where the car stakes were placed, which might cause them to rock or tilt if the pressure upon the different ends should be increased, or if by the removal of some of the stringers from one end the pressure upon that end should be lessened. It was known to the defendant's superintendent, Bowen, that this must inevitably occur as the stringers were framed and removed to the trestle. The car stakes were apparently level when the pile was completed." Bowen was present and superintended and directed the piling of the stringers, and assisted the men in piling them. " He ought to have known and he did know how the stringers were

piled," and knew that they would be removed one at a time for framing.

On the morning of the 20th of November, Bowen having asked Mr. Warner, the superintendent of the Malleable Iron Company, for two men, Warner called the plaintiff and one McDonald, employees of the Malleable Iron Company, in their annealing room, and, going with the plaintiff where the bridge gang were at work, told him to do what they should tell him to. On the 13th the plaintiff had been sent out a short time to help the bridge men, but did not work with them after that until the 20th. He knew the gang were bridge men, but did not know whether they were employed by the Malleable Iron Company or by a contractor. He was not told and did not understand he was working for the Bridge Company as its employee, or that his relation to the Malleable Iron Company had been changed. He would have gone back to the factory to work at any time upon the order of Mr. Warner. He was paid by the Malleable Iron Company for the work he did for the Bridge Company, the latter paying the Malleable Iron Company, at a slight advance, but without the knowledge of the plaintiff. Plaintiff had worked for the Malleable Iron Company several years as laborer in the annealing room, for $1.35 a day.

On the afternoon of the 20th of November, Bowen directed the plaintiff and McDonald to help move to the trestle a stringer which had been framed, and was lying upon the ground on the west side of said south·pile. At this time four or five of the stringers had been framed and removed from said south pile to the trestle, but the three forming the west tier of said pile remained as originally piled. In the work of removing the stringer lying upon the ground west of said south pile, Bowen placed the plaintiff between the stringer and the west tier of said pile. As they began to move the stringer, Bowen went away. They had moved it but two or three feet when the top stringer of said west tier fell off, crushing the plaintiff's leg.

What caused the stringer to fall was not proved. The defendant offered evidence to prove that the west faces of

the stringers were plumb, and that it would have required the application of a force of more than 300 pounds to slide the top stringer from the one beneath it, and the court finds that to be true, provided the tier of stringers was upon a firm foundation and the one which fell was placed its entire length upon another of equal length. It is found that no negligence of the plaintiff caused the stringer to fall, or contributed to his injury, that the pile seemed safe to a person where the plaintiff was at work, and that he was not informed or cautioned regarding its condition, and had no knowledge or means of knowledge excepting as appears by said facts.

The court found that the plaintiff was not totally disabled from earning wages by his injury.

Plaintiff's counsel was permitted, against the defendant's objection, to ask of one Bronson as a witness what it would cost to purchase an annuity of $100 for one of plaintiff's age. This was asked for the purpose of showing what it would cost to furnish to the plaintiff an annuity in case it should be found that his disability was total and permanent, for the amount which it was claimed to have been proved he could earn annually.

Said Bowen was asked by defendant's counsel, whose business it was to see that the timber was properly piled, and also whose business it was to see that the pile was left in a proper condition during the changing character of the pile when the men were taking off and replacing the timbers of the pile. Upon plaintiff's objection the court excluded these questions. Counsel for defendant stated that it was desired to show what the custom was. Counsel for plaintiff said there was no objection to showing what the custom was, and the court stated that if there were any instructions or rule the witness might state them.

Against the claim of the defendant the court rendered judgment for substantial damages.

*William W. Hyde* and *Seymour C. Loomis*, for the appellant (defendant).

*John O'Neill* and *William Kennedy*, for the appellee (plaintiff).

HALL, J.   The principal questions in this case arise under the defendant's contention that the act of negligence complained of was that of a co-employee of the plaintiff.

The complaint alleges, as the cause of the fall of the timber by which the plaintiff was injured, that when unloaded from the cars on the 17th of November, the stringers were insecurely piled, so that the top stringer in the west tier of the pile in question " would fall down from a slight touch or jar and largely of its own weight," and that the timbers were thus insecurely piled, and so allowed to remain until the time of the accident, through the negligence of Bowen, whose duty it was to see that the timbers were properly piled, and to examine the pile before putting inexperienced men to work near it, and under whose supervision the timbers were piled, and who was " the only representative of the defendant on this job."

These allegations are to be taken by us as true, unless they have been found to be untrue by the trial court upon the hearing in damages, or unless their truth be inconsistent with the special facts found.

What caused the timber to fall is not found; that the record shows that the defendant failed to disprove the averments that the stringer fell because the timbers were insecurely piled, and that Bowen was negligent in not causing them to be securely piled, and in allowing them to remain thus insecurely piled, is too clear for discussion.   The facts found tend to prove rather than disprove these allegations.

The trial court held that the defendant had not proved that the plaintiff's injuries were caused by the negligence of any servant of the defendant standing in the relation of co-employee to the plaintiff.   This ruling was correct, unless the facts found show, as a matter of law, both that the negligence of Bowen did not occur in connection with the discharge of a duty which the law imposed upon the defendant toward its employees, and also that the plaintiff was so far

a co-employee with Bowen that the defendant was exempt from liability for the injury caused by Bowen's negligence.

Does it appear from the record that the negligence of Bowen was not with reference to a duty which the defendant was required to perform? This question must be answered in the negative, unless the facts proved show that the defendant in the discharge of its duty towards its employees was not required to see that the timbers were securely piled.

It is found that Bowen was an experienced bridge builder, that he was sent by the defendant as its representative and as a superintendent, and given full charge of the job and men. He in fact superintended and directed the piling, though he also assisted the men in the work. He knew that the stringers were liable to fall if not properly piled, that it would be necessary to remove them one at a time for framing, and for laborers to work near the piles in removing the stringers to the trestle, and it is found to have been his duty to know how these stringers were piled.

We are not called upon to say whether the facts before us clearly show that, for the proper protection of those who were required to perform labor near these piles of timber, it was the master's duty to superintend the piling of these stringers as they were taken from the cars, but only to decide whether it has been proved that such superintendence was not required. To sustain a judgment for substantial damages in a hearing of this character, it is sufficiently alleged in the complaint that the defendant was chargeable with knowledge of the unsafe condition of the pile, that the plaintiff had not equal means of knowledge with the defendant, and that the negligence which caused the accident was that of the principal. Upon the facts of record we cannot say that the trial court erred in holding that the defendant had not disproved these allegations. That it required the superintendence of an experienced person in order to properly pile these stringers, under the circumstances, and that it was the duty of the defendant for the proper protection of its employees who were to work near these piles to see by such superintendence that the timbers were placed upon

a level and firm foundation, that each timber was fully supported by the one beneath it, and that the timbers were so securely piled that, upon the removal of some of them upon one side of the pile, a heavy timber upon the top of the tier upon the other side would not be liable to fall from a slight touch or jar, and that the defendant failed to perform such duty, are assumptions not at variance with the facts found.

Considering the character of the duty in respect to which Bowen was negligent, which is the correct test to apply in order to determine whether his negligence was that of a vice-principal or of a fellow-servant (*Kelly* v. *New Haven Steamboat Co., ante,* p. 343), we think the facts fail to show that the accident was caused by the negligence of a co-servant with the plaintiff,—assuming for the time that the plaintiff was the servant of the defendant, within the meaning of the fellow-servant rule.

In *McElligott* v. *Randolph,* 61 Conn. 157, 163, it was held that the failure of the defendant's master-mechanic to properly superintend the removal of a section of a large gear wheel from the wheel pit, whereby the plaintiff was injured, was the negligence of the employer; and in *Gerrish* v. *New Haven Ice Co.,* 63 Conn. 9, 18, that the negligence of the defendant's superintendent—who had charge of the work of raising ice from a lake to an icehouse, by means of an elevator operated by a steam engine—in failing to notify the engineer that the plaintiff was upon the elevator, and in not leaving a person, during the superintendent's temporary absence, in charge of the bell cord for signaling the engineer, was the negligence of the master.

It has been held in other jurisdictions that acts of negligence similar to that described in the complaint may be regarded as the negligence of the master. *Stephens* v. *Hudson Valley Knitting Co.,* 69 Hun, 375; *Zintek* v. *Stimson Mill Co.,* 9 Wash. St. 395; *Babcock* v. *Old Colony R. Co.,* 150 Mass. 467; *McCauley* v. *Norcross,* 155 id. 584; *Baldwin* v. *St. Louis, K. & N. Ry. Co.* 75 Iowa, 297, 68 id. 37; *Pilling* v. *Narragansett Machine Co.,* 19 R. I. 666; *Mayton* v. *Sonne-*

*field*, 48 Southwestern Rep. 608 (Tex. Civ. App. 1898) ; *Spry Lumber Co.* v. *Duggan*, 182 Ill. 218.

But if the negligence of Bowen were not that of a vice-principal, was the plaintiff so far an employee of the defendant as to entitle the defendant to exemption from liability under the fellow-servant law ?

The complaint states the facts respecting the service of the plaintiff, without alleging whether he was the servant of the Malleable Iron Company or of the defendant. The trial court made no ruling upon this question, other than that by the facts proved the defendant had failed to show that the plaintiff's injury was caused by the negligence of a fellow-servant. The plaintiff was employed by the Malleable Iron Company at fixed wages, as a laborer in their annealing room, and received all his pay from that company. At the direction of his employer he temporarily assisted the bridge men, without knowing that they were not in the employ of the Malleable Iron Company, and without understanding that he was acting as a servant of the Bridge Company, or that his relation to the Malleable Iron Company had been changed. This was by an arrangement between the two companies, of which the plaintiff was ignorant. He considered himself at all time, as he was in fact, under the control of Warner, the superintendent of the Malleable Iron Company, and he obeyed the directions of Bowen, only because told to do so by Warner. The Malleable Iron Company did not lose control over the plaintiff. Warner might at any time have recalled him, or put another workman in his place. The defendant had no power to discharge the plaintiff, beyond the right to forbid him from laboring on the bridge work.

The foundation of the fellow-servant rule is, that by the contract of employment the servant assumes the risk of perils arising from the negligence of competent fellow-servants. *Zeigler* v. *Danbury & N. R. Co.*, 52 Conn. 543, 556 ; *Sullivan* v. *New York, N. H. & H. R. Co.*, 62 id. 209, 215. Inasmuch as in the case at bar there were no contract relations between the plaintiff and defendant, and the plaintiff did not intentionally enter the defendant's employ, and the proceeding

was but a temporary transfer by the Malleable Iron Company of the services of the plaintiff to the defendant, without any knowledge on the plaintiff's part of any change of masters, the plaintiff did not become so far the defendant's servant as to assume the risk of the negligence of its employees, or as to justly entitle the defendant to immunity from the consequences of the negligence of its own servants. The plaintiff was only in a limited sense, and indirectly, the defendant's servant, from the fact that he was the servant of the Malleable Iron Company with which the defendant had contracted.

In the case of *Zeigler* v. *Danbury & N. R. Co.*, 52 Conn. 543, the facts were quite similar to those in the case at bar. Zeigler was a brakeman in the employ of the Shepaug Railroad Company, which company had contracted to furnish to the defendant an engine and trainmen to run a train over a portion of defendant's road. Zeigler was injured while so on the defendant's road, and while directly under the orders of its officers " as if employed and paid by them." In holding that he was not such a servant of the defendant that the latter might avail itself of the defense of common employment, this court said : " If, therefore, the plaintiff may in any sense be regarded as in the service of the defendant, he is clearly without the reason of the rule and therefore not within the rule itself." Other cases supporting this view are *Robertson* v. *Boston & Albany R. Co.*, 160 Mass. 191 ; *Morgan* v. *Smith*, 159 id. 570 ; *Philadelphia, W. & B. R. Co.* v. *State*, 58 Md. 372 ; *Brewer* v. *New York, L. E. & W. R. Co.*, 124 N. Y. 59, 64 ; *Murray* v. *Dwight*, 15 N. Y. App. Div. 241 ; *Delaware, L. & W. R. Co.* v. *Hardy*, 59 N. J. L. 35.

The testimony of Bronson as to the cost of an annuity, was evidently admitted as applicable only in case the court should find, as it did not, that the plaintiff's inability to earn wages was permanent and total.

The court rightly excluded the opinion of Bowen as to whose duty it was to see that the timbers were properly piled; and it is sufficiently clear, even from the stenographer's notes filed in connection with the application to correct the appeal,

that the defendant was permitted to prove the facts, rules, or custom, respecting the matter.

Other reasons of appeal do not require special discussion.

The record shows that the plaintiff was injured while, without negligence on his part, he was lawfully and upon the invitation of the defendant's superintendent in a dangerous place, and it fails to show that his injury was not caused by the defendant's negligence.

There is no error.

In this opinion the other judges concurred.